2025 IL App (1st) 231499-U

No. 1-23-1499

Filed June 4, 2025

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 98 CR 29279-03 |
| v. | ) ) | |
| JAMES DAVIS, | ) ) | Honorable Thomas J. Byrne |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to establish cause to file a successive postconviction petition to challenge his mandatory life sentence under the proportionate penalties clause of the Illinois Constitution.

¶ 2    James Davis was sentenced to natural life imprisonment for the 1988 murders of an elderly couple. The trial court denied his motion for leave to file a successive postconviction petition challenging his sentence based on his age (22) at the time of the murders. We affirm.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4          Emil Kneer, age 78, and Rose Spitall, age 65, were both found dead in their Chicago apartment from multiple stab wounds in 1988. Investigators initially believed Kneer killed Spitall and committed suicide. A decade later, a telephone call from Davis's girlfriend, Sarah Shutter, led Chicago Police detectives to question Davis about the murders. Davis ultimately gave a written statement to an Assistant State's Attorney (ASA) confessing to the murders of Kneer and Spitall.

¶ 5          Davis, along with Shutter and Phillip Jenkins, conspired to enter Kneer and Spitall's apartment to steal their television and other belongings. Davis and Shutter lived in an adjoining apartment and had animosity towards the couple. The trio also decided that, if home, they would kill the couple.

¶ 6          Davis forced a door open to enable Jenkins and Shutter to enter the couple's apartment. He then went to be a "lookout man." Jenkins, armed with a butcher knife Davis had given him, struggled with Kneer. After Shutter sprayed mace in Kneer's face, Jenkins stabbed him in the chest multiple times. Jenkins then stabbed Spitall, who was pleading for her life, in the chest. Shutter summoned Davis after the stabbings.

¶ 7          The three rummaged through the apartment, taking jars of coins and social security checks. Davis instructed Jenkins to extract the knife from Kneer's chest and place it in his hand, intending to portray that Kneer had killed Spitall and then himself. Jenkins refused, so Davis staged the scene himself. They also repaired the door to remove evidence of their forced entry. The crime yielded the trio about $25 each.

¶ 8          Before trial, Davis moved to suppress his confession. Among other claims, he argued he was unable to understand his *Miranda* rights due to drowsiness caused by his psychotropic medication. A pretrial hearing elicited testimony from psychiatric experts who examined Davis.

Dr. Larry Heinrich opined that Davis could not have voluntarily waived his *Miranda* rights due to his cognitive developmental deficits and side effects of his medication. Dr. Stafford Henry opined that, despite Davis's cognitive deficits, he understood and intelligently waived his *Miranda* rights. Dr. Henry also believed Davis was malingering. The ASA who took Davis's statement testified that Davis was not drowsy at the time of his statement. The trial court denied the motion to suppress Davis's confession.

¶ 9        Jenkins testified against Davis at trial and described him as "the brains behind the whole murder." A jury found Davis guilty of both murders and the court found him eligible for the death penalty. After a sentencing hearing, the court found mitigating factors precluded the death penalty and sentenced Davis to two concurrent terms of natural life imprisonment. A natural life sentence was mandatory because Davis had been convicted of the murders of more than one person. Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-1(a)(1)(c).

¶ 10        On direct appeal, Davis challenged the denial of his motion to suppress his statement. A majority of the panel from this court rejected the claim and affirmed his conviction. *People v. Davis*, No. 1-06-1098 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11        Davis filed a *pro se* postconviction petition in 2010, which the trial court summarily dismissed as frivolous and patently without merit. We granted appointed counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed the dismissal. *People v. Davis*, No. 1-10-3610 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12        In 2023, Davis filed the instant *pro se* motion for leave to file a successive postconviction petition along with a proposed petition. He claimed his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) because the statute

mandating a life sentence precluded the court from considering his youth, its attendant circumstances, and his intellectual disabilities. Davis relied on the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that the eighth amendment's proscription on cruel and unusual punishment barred mandatory life sentences for juvenile offenders. He also cited subsequent decisions from the Illinois Supreme and Appellate Courts suggesting that young adult offenders could challenge their sentence based on the principles of *Miller* under the proportionate penalties clause. Davis asserted these cases, decided after he filed his initial postconviction petition, establish cause and prejudice to allow him to file a successive petition. He also attached four articles discussing the science of brain development and its implications for sentencing juvenile and young adult offenders.

¶ 13     The trial court denied Davis's motion for leave to file a successive petition. We allowed Davis's late notice of appeal.

¶ 14                                   II. ANALYSIS

¶ 15     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)) enables an imprisoned person to challenge their conviction or sentence on constitutional grounds. *People v. Jackson*, 2021 IL 124818, ¶ 27. The Act is not a substitute for or an addendum to a direct appeal. *People v. Rogers*, 197 Ill. 2d 216, 221 (2001). Rather, a petition filed under the Act is a collateral action to raise issues that escaped review on direct appeal. *Id*. The Act contemplates the filing of only one petition. *People v. Lusby*, 2020 IL 124046, ¶ 27. Successive petitions are disfavored and only permitted upon leave of court. *People v. Edwards*, 2012 IL 111711, ¶¶ 24, 29. Leave to file a successive petition may be granted if the petitioner either (1) makes a colorable claim of actual innocence or (2) establishes a *prima facie* showing of both cause and prejudice. *People v. Montanez*, 2023 IL 128740, ¶¶ 77-78. Cause is an objective reason that prevented the petitioner

from including the issue in an initial petition. *Id*. ¶ 77. Prejudice means the claimed error so infected the trial that the resulting conviction or sentence violates due process. *Id*. Leave should be denied when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35. We review the trial court's denial of a motion for leave to file a successive petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 16      Davis claims his mandatory sentence for crimes he committed at age 22 violates the proportionate penalties clause in light of principles announced in *Miller*. He argues that since *Miller* and the Illinois cases he cited were decided years after he filed his initial petition in 2010, he has shown cause and prejudice for a successive petition.

¶ 17      The proportionate penalties clause of the Illinois Constitution provides "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*). The proportionate penalties clause provides broader protection than the eighth amendment. *People v. Clemons*, 2012 IL 107821, ¶ 36.

¶ 18      Our supreme court has held that a person who turned 18 before committing their offense is ineligible to obtain eighth amendment relief based on *Miller*. *People v. Harris*, 2018 IL 121932, ¶ 61. Nonetheless, the court left open the possibility that a young adult offender could, under the proportionate penalties clause, demonstrate "how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to [their] specific facts and circumstances." *Id*. ¶ 46. Such a claim, however, would require a more developed record,

beyond basic information about the defendant like that typically contained in a presentence investigation report. *Id*. In *People v. House*, 2021 IL 125124, the court remanded an initial postconviction petition for further proceedings for the same reason. *Id*. ¶ 32.

¶ 19　　　　Although the court opened the door for young adult offenders to assert a *Miller*-based proportionate penalties claim, the door was opened only wide enough to permit such claims in an initial postconviction petition. *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. In general, claims that could have been raised in an initial or amended petition, but were not, are deemed waived. 725 ILCS 5/122-3 (West 2022). In *People v. Dorsey*, 2021 IL 123010, the court observed, "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing," so *Miller* provided only "some helpful support" for a proportionate penalties claim. *Id*. ¶ 74. Thus, the court remarked, "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Id*.

¶ 20　　　　The court reasoned similarly in *People v. Clark*, 2023 IL 127273. There, the defendant committed murder at age 24 and received a 90-year sentence. He failed to raise a proportionate penalties claim in either his initial 2001 petition or his 2012 successive petition. *Id*. ¶¶ 24-25. In 2018, the defendant sought leave to file a successive petition to assert a *Miller*-based proportionate penalties claim premised on his age and intellectual disabilities. *Id*. ¶ 26. The court found he failed to establish cause, since he "had the essential legal tools" to raise the claim in his previous petitions. *Id*. ¶ 93. The court stated, "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders." *Id*. Distinguishing prior decisions, including *Harris*, the court explained those cases "addressed the possibility of a

defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphases in original.) *Id.* ¶ 88.

¶ 21        Likewise, two defendants who committed murder at age 19 failed to satisfy the cause prong for *Miller*-based proportionate penalties claims in successive petitions in *People v. Moore*, 2023 IL 126461. The court commented, "As *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *Id.* ¶ 40.

¶ 22        Based on this precedent, we must conclude that Davis cannot establish cause to justify the filing of his *Miller*-based successive petition. As we noted in a similar case, "a proportionate penalties clause claim was always available to him in some form." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63. *Miller* was simply helpful support and not the basis for a new claim. *Id.* (citing *Clark*, 2023 IL 127273, ¶ 93).

¶ 23        Davis attempts to distinguish his claim on the basis that his life sentence was mandatory, rather than discretionary. This court has rejected the same argument, observing "nothing in *Moore* suggested a distinction between discretionary and mandatory sentences." *People v. Leach*, 2024 IL App (4th) 230298, ¶ 86.

¶ 24        The factor barring Davis's claim is that his petition is successive. He could have raised an age or intellectual disability related proportionate penalties claim in his initial 2010 petition. Illinois courts had recognized such claims as cognizable well before then. See *Leon Miller*, 202 Ill. 2d at 338-343 (holding that mandatory life sentence for 15-year-old for multiple first degree murders violated the proportionate penalties clause); see also *Clark*, 2023 IL 127273, ¶ 66 (citing *People v. Henderson*, 83 Ill. App. 3d 854, 869-70 (1980), to observe that proportionate penalties claims based on intellectual disability are not newly recognized). As we previously explained, our

supreme court "opened the door only wide enough to accommodate claims involving mandatory life sentences that were raised in *initial* postconviction petitions." (Emphasis added.) *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. Because the petition before us is successive, it cannot proceed.

¶ 25                                    III. CONCLUSION

¶ 26        Based on the foregoing, we affirm the judgment of the circuit court.

¶ 27        Affirmed.