2025 IL App (1st) 240463-U

No. 1-24-0463

Order filed October 16, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | No. 03 CR 1284 |
| | ) | |
| GREGORY MINNIEFIELD, | ) | Honorable Peggy Chiampas, |
| | ) | Judge, Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justice Quish concurred in the judgment.
Justice Ocasio specially concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court did not err in dismissing defendant's successive postconviction petition where he cannot establish cause for failing to raise his proportionate penalties clause challenge in his initial postconviction petition. Postconviction counsel did not provide unreasonable assistance. Affirmed.

¶ 2    Defendant Gregory Minniefield appeals from the circuit court's second-stage dismissal of his successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2016)). Following a jury trial in 2005, Minniefield was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)), which he committed in 2002 when he was 19 years old. The trial court sentenced him to 25 years for murder and 25 years for personally

discharging the firearm that caused the victim's death (730 ILCS 5/5-8-1(d)(iii) (West 2002)), for a total of 50 years in prison.

¶ 3    Minniefield contends on appeal that he made a substantial showing that his 50-year sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). He argues he satisfied the cause and prejudice test for filing a successive postconviction petition because he presented new, previously unavailable, factual evidence that, at the time he committed the offense when he was 19 years old, his brain was immature and still developing. In the alternative, Minniefield argues that postconviction counsel provided unreasonable assistance.

¶ 4                                    I. BACKGROUND

¶ 5    Following a 2005 jury trial, Minniefield was found guilty of first degree murder in the shooting death of the victim, Theopolis Ransberry, that occurred on December 17, 2002, when Minniefield was 19 years old. The trial evidence is not at issue here. We will therefore summarize and repeat the trial evidence that was set forth in this court's prior orders. See *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Illinois Supreme Court Rule 23); *People v. Minniefield*, No. 1-08-0649 (2010) (unpublished order under Illinois Supreme Court Rule 23); *People v. Minniefield*, 2014 IL App (1st) 130535; *People v. Minniefield*, 2015 IL App (1st) 141094; *People v. Minniefield*, 2020 IL App (1st) 170541.

¶ 6    The evidence showed that, on December 17, 2002, Minniefield was driving in a car with his girlfriend and cousin, and the victim was driving in his car with three other passengers. The three passengers who were in the victim's car and Minniefield's cousin testified that, at one point, the victim's car passed Minniefield's car, and then Minniefield shot his gun out the window. Both cars pulled over and Minniefield got out of his car and walked to the victim. Minniefield shot

the victim multiple times without provocation. *Minniefield*, 2014 IL App (1st) 130535, ¶ 10; *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7    Minniefield gave a videotaped statement after the incident, which was admitted into evidence. In his statement, Minniefield stated that, when he was driving with his girlfriend and cousin, the victim's car passed them. Minniefield started to chase him because earlier that day they had a "feud over money." While Minniefield was chasing the victim, Minniefield shot his gun two times in the air. The victim and Minniefield both stopped their cars. Minniefield walked up to the victim's door while pointing his gun at the ground. Minniefield grabbed a chain around the victim's neck and told him to "give me this for the money you owe." The victim moved and Minniefield shot his gun towards the victim's leg. The car moved forward, which caused Minniefield to shoot the gun four more times. Minniefield knew his bullets hit the victim and one of the passengers. Minniefield drove off and hid the gun. Minniefield stated that he intended to scare the victim, not to hurt anyone. *Id.* ¶12; *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8    Minniefield testified at trial as follows. In April 2002, he had a conversation with the victim about an incident with Minniefield's girlfriend. In the afternoon on December 17, 2002, while Minniefield was driving with his two-year-old son, the victim shot a gun at his car. Minniefield reported the shooting to a police officer in the area, but the police officer left for an emergency call. *Minniefield*, 2014 IL App (1st) 130535, ¶ 14.

¶ 9    Later that evening, when Minniefield was driving with his girlfriend and cousin, the victim's car passed Minniefield's car. The victim pulled over, after which Minniefield got out of his car and approached the victim's vehicle. Minniefield wanted to talk to the victim about the

misunderstanding with his girlfriend. When Minniefield got to the victim's car, the victim said, "Oh, s\*\*\*," and reached down to grab something. Minniefield thought he was "reaching for a gun" and was going to shoot him. Minniefield then shot down into the car two times. The victim moved his car forward, with Minniefield's hand still inside the car, which caused Minniefield's hand to hit the window frame and the gun to go off several times. He did not mean to shoot the gun and had no intention of shooting when he approached the car. The victim's car drove off, and Minniefield did not think he shot anyone. *Id.*; *Minniefield*, 2020 IL App (1st) 170541, ¶¶ 7-8; *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10        The jury received instructions on first degree murder, second degree murder, and self-defense. The jury found Minniefield guilty of first degree murder. *Minniefield*, 2020 IL App (1st) 170541, ¶ 11.

¶ 11                                Sentencing

¶ 12        At sentencing, the court noted that the sentencing range for first degree murder was 20 to 60 years, plus a mandatory 25-year firearm enhancement for personally discharging the firearm that proximately caused the victim's death. The court stated that Minniefield would serve 100% of his time. The court also noted that it reviewed the presentence investigation report (PSI).

¶ 13        The PSI indicated that Minniefield, who was 19 years old on the date of the offense, did not have any juvenile convictions and had three adult convictions for possession of a controlled substance, for which he received supervision or probation. According to the PSI, before Minniefield's arrest, he lived with his grandmother, mother, and sister, he was a good student, he was on the football and basketball teams while in high school, and he completed one year of college. His mother, with whom he had a "great" relationship , raised him, and he had a "fair"

relationship with his father, who was currently incarcerated. As for employment, the PSI reported that Minniefield worked as a laborer for United Parcel Services and had previous employment at two other jobs. It stated that Minniefield denied having any past or present gang involvement. *Id.* ¶¶ 12-13.

¶ 14        At the sentencing hearing, the victim's mother read a statement about the impact that the victim's death had on her family, and Minniefield's aunt read a letter on behalf of Minniefield's family. In aggravation, the State highlighted the "senselessness" of the offense, noting that Minniefield walked up to the car and "basically emptied that gun into that car" and "did it because he was mad." The State requested Minniefield receive "well above" the minimum sentence of 45 years in prison. In mitigation, defense counsel highlighted Minniefield's "good family background" and strong support, his education, work history, and lack of a violent background. See *id.* ¶ 14.

¶ 15        The court sentenced Minniefield to 25 years for first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) and 25 years for personally discharging a firearm during the offense that proximately caused the death of the victim, for a total of 50 years in prison. In addition to the PSI, the court also noted that it considered the facts of the case and the victim impact statements. The court stated that it was "as senseless an act as I have ever seen," he was "angry at this man for whatever reason," and he "practically emptied a gun into a car full of people." For mitigation, the court highlighted Minniefield's good family, education and work history, and it stated that he had made efforts to "live a decent, respectable life." The court also noted that Minniefield did not have a violent background and was not involved in a gang.

¶ 16        Defense counsel moved to reconsider the sentence, and the trial court denied the motion.

¶ 17                                            Direct Appeal

¶ 18        On direct appeal, Minniefield contended that trial counsel was ineffective for failing to request an involuntary manslaughter jury instruction because the evidence was sufficient to show that he acted recklessly when he shot the victim. This court affirmed the trial court's judgment. *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 19                                    Post-Conviction Proceedings

¶ 20        In 2007, Minniefield filed a *pro se* postconviction petition, in which he alleged trial counsel was ineffective for failing to investigate and present certain witnesses as well as to request an involuntary manslaughter jury instruction. The circuit court summarily dismissed Minniefield's petition. On appeal, this court reversed the circuit court's dismissal and remanded for second-stage proceedings, concluding that Minniefield's allegation that trial counsel was ineffective for failing to investigate or present witnesses had an arguable basis in law and fact. *People v. Minniefield*, No. 1-08-0649 (2010) (unpublished order under Illinois Supreme Court Rule 23). On remand, the circuit court dismissed Minniefield's postconviction petition, which was supplemented by postconviction counsel, and this court affirmed that dismissal. *Minniefield*, 2014 IL App (1st) 130535, ¶¶ 30, 48, 100.

¶ 21        In 2013, Minniefield filed a "Motion to Vacate Conviction/Sentence as Void" in which he challenged the 25-year firearm sentencing enhancement. The circuit court struck the motion and, on appeal, this court affirmed. *Minniefield*, 2015 IL App (1st) 141094, ¶¶ 3-4, 39, 60. In November 2015, Minniefield filed a motion for leave to file a successive postconviction petition, in which he continued to challenge the 25-year sentencing firearm enhancement. The circuit court

denied Minniefield leave to file the petition. *Minniefield,* 2020 IL App (1st) 170541, ¶ 19. Minniefield appealed but later voluntarily dismissed it.

¶ 22    In January 2017, Minniefield filed the successive postconviction petition at issue here. He alleged he was denied a fair sentencing hearing because the sentencing court failed to consider the mitigating factors set forth in *Miller v. Alabama,* 567 U.S. 460 (2012). He acknowledged that *Miller* expressly applied to minors under the age of 18, but asserted that the "policy concerns applied with equal force to a 19 year old." He asserted that recent research and case law discussed the differences between young adults like Minniefield, who was 19 years old when he committed the offense, and fully mature adults, noting that studies have shown that the brain does not finish developing until an individual is in their mid-20s and that young adults have a high capacity for rehabilitation. He attached to his petition articles discussing young adults as well as numerous certificates from programs he completed while in prison, including courses in violence prevention, parenting, employment skills, family finance, and "Life Skills." *Minniefield*, 2020 IL App (1st) 170541, ¶¶ 20-21.

¶ 23    The circuit court denied Minniefield leave to file the successive postconviction petition. On appeal, this court reversed the circuit court's ruling and remanded for second-stage proceedings, concluding that Minniefield established cause and prejudice for filing a successive postconviction petition. *Id.* ¶¶ 31, 44. In doing so, this court found that Minniefield established cause for failing to raise his claim in an earlier proceeding because he filed his initial postconviction petition in December 2007, which was before *Miller* was issued. *Id.* ¶ 31. As such, this court concluded that, at that time he filed his initial petition, he could not have raised a specific claim based on *Miller. Id.* Citing *People v. Harris*, 2018 IL 121932, ¶¶ 46, 48, this court also concluded that Minniefield established prejudice, noting that our supreme court has found that the

"proper vehicle" for a young adult to raise an as-applied challenge to an alleged *de facto* life sentence is in a postconviction proceeding, as a "ruling without a developed record is 'premature.' " *Minniefield*, 2020 IL App (1st) 170541, ¶ 43-44. This court stated that the record contained "no evidence about the evolving science and its impact on [Minniefield's] case, and it contains only the basic information from the presentence report." *Id.* ¶ 47.

¶ 24     On remand, postconviction counsel was appointed for Minniefield. Postconviction counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), as well as a supplemental petition.

¶ 25                    Supplemental Petition

¶ 26     In the supplemental petition filed by postconviction counsel, Minniefield argued that his 50-year sentence for an offense he committed when he was 19 years old was unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He asserted that his youth and its attendant circumstances at the time of the offense were not sufficiently considered at sentencing.

¶ 27     As for his claim under the proportionate penalties clause, Minniefield argued that Illinois affords broader protection under this clause than the eighth amendment and, in light of *Miller* and its progeny, the court should reconsider his 50-year sentence for an offense he committed when he was 19 years old. Citing *People v. House*, 2019 IL App (1st) 110580-B, and *People v. Harris*, 2018 IL 121932, Minniefield argued that *Miller* principles may be extended to emerging adults like him and that there was a strong scientific rationale for doing so, as the issues of immaturity, impetuosity, and irresponsibility continue to exist in individuals over the age of 18 when the brain is still developing. He also argued that early life stress can impact the development

8

of the emotional regions in the brain, including the prefrontal cortex, and that negative experiences during development increase the risk for psychopathology in late adolescence.

¶ 28        Minniefield argued that the research regarding the brain development of young offenders did not exist at the time of his sentencing. Minniefield cited and attached to his petition an article entitled, "White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy Makers" published in 2022 by the Center for Law, Brain & Behavior at Massachusetts General Hospital. He also cited a 2010 article entitled "Child Adversities and Adult Psychopathy in WHO World Mental Health Surveys" published in the British Journal of Psychiatry.

¶ 29        Minniefield explained that, at the time of the offense when he was 19 years old, the parts of his brain related to decision-making and impulse control had not fully formed yet. According to Minniefield, his childhood was stressful, disadvantaged, and traumatic. Minniefield attached an affidavit that highlighted facts from his childhood. He was raised by his mother and grandmother, and before his incarceration, his life was "good and bad." He grew up without a father, who was abusive, and he watched his father physically and mentally abuse his mother. His mother moved him and his younger sister to his grandmother's house, where he shared a basement with his uncles. His uncles were members of a gang, physically abusive to him, and told him that in order to stay in the basement, he had "to do as they said when it came to street hustle." His uncles made him "fight the bullies at his school" and would tell him "either you fight the bully or fight us." His mother struggled to provide food and clothing. The neighborhood where he grew up was "wild and crazy" with gangs, drugs, and "shootings." Because of his uncles, he was "approached by the gangs in [his] neighborhood." His worst memory as a child "was never wanting to grow up and be an adult" because his father told him "real men acted like him," and all he could

remember his father doing was abusing his mother and drugs. He started "smoking weed and taking pills to get away from the pain and suffering" and, when he committed the crime, he was in "a bad place emotionally and mentally." Since his incarceration, he stayed away from drugs, gangs, and violence, and only received four disciplinary tickets in prison. He has participated in several programs in prison and became a mentor to youth.

¶ 30     According to Minniefield, these negative experiences likely placed him at risk for experiencing negative development of the parts of the brain responsible for self-control, causing his maturity when he was 19 years old to be more like a juvenile rather than an adult.

¶ 31     Minniefield also argued that he had demonstrated rehabilitative potential. He highlighted that during the 20 years while incarcerated, he participated in many programs, avoided gangs and drugs, mentored young inmates and members of his former community, and completed at least seven self-improvement courses. He also completed an educational course in essays, novels and plays, for which he received a certificate of completion from Loyola University Chicago.

¶ 32     Minniefield cited and attached to his petition this court's decision in *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 56, which highlighted the testimony given by Dr. Laurence Steinberg in *Cruz v. United States*, No. 11-CV-787, 2018 WL 1541898 (D. Conn. Mar. 29, 2018), vacated, 826 F. App'x 49 (2d Cir. 2020), regarding the differences between adults and adolescents, whom Dr. Steinberg defined as individuals between 10 to 21 years old. Minniefield also attached an Adverse Childhood Experience (ACE) questionnaire that he completed as well as certificates of completion in the numerous programs in which he participated while in prison.

¶ 33                         State's Motion to Dismiss

¶ 34     The State moved to dismiss Minniefield's petition, arguing that his claims under the eighth amendment failed because the protections under *Miller* only applied to juveniles under the

age of 18. As for Minniefield's *Miller*-based challenge under the proportionate penalties clause, the State argued that this claim also failed because, as a 19-year-old, he received a discretionary sentence for first degree murder, and he personally discharged the firearm that caused the victim's death. The State asserted that the sentencing court had the opportunity to, and did, fully consider the mitigation evidence, including his youth, level of participation, and social circumstances.

¶ 35    The State further argued that Minniefield failed to establish cause for his failure to raise his proportionate penalties clause claim in an earlier proceeding. Citing our supreme court's decisions in *People v. Moore*, 2023 IL 126461, ¶¶ 40, 42, and *People v. Clark*, 2023 IL 127273, ¶ 61, which were issued after Minniefield filed his supplemental petition, the State asserted that, "[a]s *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the Proportionate Penalties Clause."

¶ 36    Lastly, the State asserted that Minniefield failed to provide relevant evidence about his brain development at the time of the offense. Citing *People v. Harris*, 2018 IL 121932, ¶ 46, the State argued that "basic information about defendant" was not enough, and an adult defendant must point to " 'evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances.' " According to the State, Minniefield did "not identify anything unique or specific to him that would show that he was functionally the same as a juvenile when he committed first-degree murder."

¶ 37    At the hearing on the State's motion to dismiss, the State rested on its motion. Defense counsel stated that he believed the "claims would rise to a substantial constitutional violation however I do acknowledge that the legal landscape has changed since the pro se filing and my supplemental filing." Counsel stated that he "discussed that with [Minniefield] and I do offer that

as an explanation as to why—to both the court and [Minniefield] that I'm resting on the pro se filing and my supplemental filing in response to the [S]tate's motion to dismiss."

¶ 38                                      Trial Court's Order

¶ 39        The court granted the State's motion to dismiss. In a written order, the court concluded that Minniefield failed to make a substantial showing that his 50-year sentence violated the eighth amendment. In doing so, the court stated that *Miller* and its progeny only applied to juveniles under the age of 18 and did not extend to Minniefield, who was 19 years old at the time of the offense. In its analysis under the eighth amendment, the court noted that Minniefield did not attach documents to make a substantial showing that he was more like a juvenile than an adult when he committed the offense.

¶ 40        The court also concluded that Minniefield failed to make a substantial showing that his sentence violated the proportionate penalties clause, finding that Minniefield could not rely on *Miller* as a basis for cause to raise his claim in his successive postconviction petition. Citing *People v. Moore*, 2023 IL 126461, ¶ 40, the court stated that, "[i]n light of recent Illinois case law, [*Miller*] does not provide cause for young defendants to 'challenge the constitutionality of their sentences under the proportionate penalties clause of the Illinois Constitution.' " The court noted that Minniefield could have raised a proportionate penalties clause challenge to his sentence before *Miller* was issued, "as Illinois has always recognized the special status of juvenile offenders." The court also concluded that, even if Minniefield could establish cause for his proportionate penalties claim, his claim would still fail. The court explained that Minniefield received a discretionary 50-year sentence for first degree murder, not a *de facto* life sentence or mandatory life sentence, and that he was an adult and an active participant in the offense.

¶ 41        This appeal follows.

¶ 42                                    II. ANALYSIS

¶ 43        Minniefield contends that he satisfied the cause and prejudice test for filing a successive postconviction petition because he presented new, previously unavailable factual evidence that, when he was 19 years old and committed the offense, his brain was immature and still developing. He asserts that the scientific research that formed the basis of his emerging-adult proportionate penalties clause claim was unavailable at the time of his sentencing in 2005 or his direct appeal and initial postconviction proceedings in 2007 and that, until recently, he was unable to take advantage of the new research to develop a factual basis for his claim. Minniefield also contends that his petition made a substantial showing that his 50-year sentence violated the proportionate penalties clause of the Illinois Constitution as applied to him.

¶ 44        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) "provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights under the United States Constitution or the Illinois Constitution or both." *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 34. "It is not a substitute for appeal but, rather, a collateral proceeding that attacks a final judgment." *People v. Ealy*, 2024 IL App (1st) 221748, ¶ 30. As such, claims not presented in an initial petition or amended petition are waived, and issues that have previously been decided by a reviewing court are barred under the doctrine of *res judicata. People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Sanders*, 2016 IL 118123, ¶ 24 (citing 725 ILCS 5/122-3 (West 2014)).

¶ 45        There are three stages for postconviction petitions. *People v. Bailey*, 2017 IL 121450, ¶ 18. At the first stage, the circuit court reviews whether the petition states the "gist of a constitutional violation or is either frivolous or patently without merit." *Id.* (citing 725 ILCS 5/122-2.1(a)(2) (West 2014)). At the second stage, the circuit court may appoint counsel to

represent the defendant, and the court "determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* If the petition advances to the third stage, the circuit court holds an evidentiary hearing and then decides whether to grant relief. *Id.*

¶ 46    The Act contemplates a defendant filing only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27; 725 ILCS 5/122-1(f) (West 2016). "Successive petitions are highly disfavored, and the statutory bar will be relaxed only when fundamental fairness requires it." *People v. Figueroa,* 2022 IL App (1st) 172390-B, ¶ 22. As such, to file a successive petition, a defendant must obtain leave of court. *Horshaw,* 2024 IL App (1st) 182047-B, ¶ 35.

¶ 47    To obtain leave of court to file a successive petition, a petitioner may either establish "a fundamental miscarriage of justice based on actual innocence," or, as relevant here, cause and prejudice for the failure to raise the claim in an earlier proceeding. *People v. Robinson*, 2020 IL 123849, ¶ 42; 725 ILCS 5/122-1(f) (West 2016). This cause and prejudice test "is a procedural prerequisite to obtaining further review of a defendant's claim." *Figueroa*, 2022 IL App (1st) 172390-B, ¶ 23. To demonstrate cause, "a defendant must identify an objective factor that impeded his ability to raise the claim in his initial petition." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 36. To establish prejudice, a "defendant must demonstrate that the claim so infected the trial that the resulting conviction or sentence violated due process." *Id.* A petitioner must establish both elements of the cause and prejudice test. *People v. Clark*, 2023 IL 127273, ¶ 47. The cause and prejudice requirement to file a successive postconviction petition "is a higher burden than the 'frivolous or patently without merit' standard for initial pleadings." *Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22 (quoting *Edwards*, 2012 IL 111711, ¶¶ 24-29).

14

¶ 48    If the circuit court finds that a petitioner sufficiently alleged cause and prejudice and allows the petitioner to file the successive postconviction petition, then the petition advances as discussed above. *People v. Thames*, 2021 IL App (1st) 180071, ¶ 78. At this time, "the first stage is rendered unnecessary, and the successive petition is docketed directly for second-stage proceedings," as "the filed successive petition has already satisfied a higher standard." *Id*. At this second stage, the State may still seek "dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition," as occurred here. *Bailey*, 2017 IL 121450, ¶ 26.

¶ 49    At the second stage, where the circuit court may appoint counsel to represent the petitioner, it is the petitioner's burden to make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). The "substantial showing" of a constitutional violation that a petitioner must show at this stage "is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original). *People v. Domagala*, 2013 IL 113688, ¶ 35. Also, at this stage, "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *Pendleton*, 223 Ill. 2d at 473. We review a circuit court's dismissal at the second stage as well as its determination of cause and prejudice under the *de novo* standard of review. *People v. Dupree*, 2018 IL 122307, ¶ 29; *Clark*, 2023 IL 127273, ¶ 47. Under *de novo* review, as a reviewing court, we perform the same analysis that a trial court would perform. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 21.

¶ 50    Here, Minniefield argues that he established cause for his claim that his 50-year sentence for an offense he committed when he was 19 years old violates the proportionate penalties

clause because the scientific research regarding the brain development of young adults that formed the basis of his claim was previously unavailable.

¶ 51　　Under the proportionate penalties clause, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence "violates the proportionate penalties clause if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 70.

¶ 52　　In *Miller v. Alabama*, 567 U.S. 460, 465, 489 (2012), the United States Supreme Court concluded that a mandatory life sentence without parole for a juvenile, who was under the age of 18 years old at the time of the offense, violates the eighth amendment's prohibition on "cruel and unusual punishment." The court in *Miller* explained that "a mandatory life sentence for juveniles poses too great a risk of imposing disproportionate punishment when a sentencing court is required to impose the harshest prison sentence while being precluded from considering a lesser sentence due to the juvenile offender's age and 'the wealth of characteristics and circumstances attendant to it.' " *Clark*, 2023 IL 127273, ¶ 54 (quoting *Miller*, 567 U.S. at 476). These characteristics include recklessness, impulsiveness, "immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 U.S. at 471, 476-77. The court in *Miller* explained that "children are constitutionally different from adults for purposes of sentencing," and " 'are less deserving of the most severe punishments,' " as they "have diminished culpability and greater prospects for reform." *Miller*, 567 U.S. at 471, 476-77 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)).

¶ 53　　Our supreme court has concluded that, "for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *People v. Harris*, 2018 IL 121932, ¶ 61. As such,

individuals who are 18 years old or older at the time of the offense, as here, may not obtain relief pursuant to a *Miller*-based eighth amendment claim. *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 43. However, our supreme court has also concluded that defendants between the ages of 18 and 19, like Minniefield, may raise an as-applied proportionate penalties clause claim to a life sentence "based on the evolving science on juvenile maturity and brain development." *Clark*, 2023 IL 127273, ¶ 87. This court has also explained that, under the proportionate penalties clause, young adults may make "as-applied challenges to their life sentences using the proportionate penalties clause and the principles contained within *Miller*." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 50.

¶ 54　　　　However, our supreme court has "opened the door only wide enough to accommodate claims involving mandatory life sentences that were raised in initial postconviction petitions." *Id.* ¶ 62; *People v. Davis*, 2025 IL App (1st) 231499-U, ¶¶ 19, 24 ("Although the court opened the door for young adult offenders to assert a *Miller*-based proportionate penalties claim, the door was opened only wide enough to permit such claims in an initial postconviction petition.").

¶ 55　　　　In *People v. Dorsey*, 2021 IL 123010, the defendant, who was 14 years old at the time of the offense, sought leave to file a successive postconviction petition challenging his sentence under the eighth amendment. *Id.* ¶¶ 4, 23-24. The defendant, for the first time on appeal to the supreme court, argued his sentence violated the proportionate penalties clause under *Miller*. *Id.* ¶¶ 68, 70. In addition to finding that the claim was forfeited and barred by *res judicata*, the court also found that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Id.* ¶¶ 70, 73-74. The court explained that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Id.* ¶ 74. The court then concluded that "*Miller*'s unavailability prior to 2012 at best deprived defendant of 'some

helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59).

¶ 56        Later, in *People v. Clark*, 2023 IL 127273, ¶ 94, the supreme court similarly concluded that *Miller* did not provide cause for raising a proportionate penalties clause claim in a successive postconviction petition. In *Clark*, the defendant, who was 24 years old when he committed murder in 1993, did not raise a challenge to his 90-year sentence under the proportionate penalties clause in his postconviction petitions filed in 2001 or 2012. *Id.* ¶¶ 24-25, 40. In 2018, he sought leave to file a successive postconviction petition challenging his sentence under the proportionate penalties clause based on his age and intellectual disabilities, and, citing *Miller*, he argued he satisfied the cause and prejudice test for filing a successive postconviction petition. *Id.* ¶¶ 26-27, 36; *Horshaw*, 2024 IL App (1st) 182047-B, ¶52. The court concluded that "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders," and that, when the defendant filed his previous postconviction petitions, he " 'had the essential legal tools' " to raise his proportionate penalties clause claim. *Clark*, 2023 IL 127273, ¶ 93 (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 49). Citing its decisions in *People v. Harris*, 2018 IL 121932, and *People v. Thompson*, 2015 IL 118151, the court noted that it has "not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *Clark*, 2023 IL 127273, ¶ 87. However, in distinguishing those cases, the court stated that they "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphases in original.) *Id.* ¶ 88.

¶ 57    Then, in *People v. Moore*, 2023 IL 126461, ¶¶ 1, 15, 25, 27, two petitioners appealed from the denials of their motions to file successive postconviction petitions challenging their life sentences for offenses they committed when they were 19 years old. They argued *Miller* provided cause to challenge their sentences under the proportionate penalties cause. *Id.* ¶ 40. Our supreme court concluded that they could not establish cause, finding that, "[a]s *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *Id.* The court concluded that *Miller* "did not change the law applicable to young adults," so it did not provide cause for the defendants' proportionate penalties clause challenges raised in their successive postconviction petitions. *Id.* ¶ 42. Citing its decision in *Clark*, the court stated that, "[l]ong before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." (Internal quotation marks omitted.) *Id.* ¶ 41.

¶ 58    Shortly thereafter, in *People v. Hilliard*, 2023 IL 128186, ¶ 28, the court further explained that " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition." (quoting *Dorsey*, 2021 IL 123010, ¶ 74).

¶ 59    Applying these decisions, Minniefield cannot establish cause for his failure to raise his proportionate penalties clause challenge to his 50-year sentence in his initial postconviction petition. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 7, 62-63 (following the supreme court precedent, this court concluded that the defendant, who was 18 years old at the time of the offense, could not establish cause for his failure to raise his proportionate penalties sentencing challenge in his initial postconviction petition).

¶ 60 Minniefield nevertheless asserts that *Moore* and *Clark* do not foreclose him relief because he does not rely on *Miller* as the sole cause for failing to raise his claim earlier but rather relies on new evidence and facts supporting his claim that did not exist at the time of his previous postconviction proceedings. This new evidence, he argues, includes scientific articles from 2015 and 2016, the testimony from Dr. Laurence Steinberg from September 2017, and the 2022 research paper published by the Center for Law, Brain & Behavior at Massachusetts General Hospital entitled "White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy Makers." According to Minniefield, the new research on brain development of young adults over the age of 18 discussed in that research paper showed that a significant amount of scientific development, which would directly impact his culpability and potential for rehabilitation, occurred after Minniefield filed his initial postconviction petition in 2007.

¶ 61 This court has previously rejected the argument that recent neuroscientific research in the brains of young adult offenders provided the necessary cause for raising a proportionate penalties clause challenge in a successive postconviction petition. *People v. Scaggs*, 2025 IL App (1st) 240953-U, ¶¶ 46, 49-51; *People v. Robinson*, 2025 IL App (1st) 231419-U, ¶¶ 59, 62-63; *People v. Searles*, 2024 IL App (1st) 210043-U, ¶¶ 13-17. We follow the reasoning in these cases and similarly conclude that the recent neuroscientific research does not provide Minniefield cause for failing to raise his challenge in his initial postconviction petition.

¶ 62 This court has explained that the factual basis for a sentencing challenge based on a petitioner's age "is that fully developed adults are different from young adults who are still developing." *Searles*, 2024 IL App (1st) 210043-U, ¶ 17. However, as previously discussed, Illinois courts have long recognized that there is a distinction between fully developed adults and young adults who are still developing. *Id.*; *Haines*, 2021 IL App (4th) 190612, ¶ 47 ("Illinois courts

have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing."). In *Clark*, 2023 IL 127273, ¶ 92, our supreme court explained that "Illinois cases have long held that the proportionate penalties clause required the circuit court to take into account the defendant's 'youth' and 'mentality' in fashioning an appropriate sentence." Our supreme court has also explained that, "[a]s far back as 1894, this court recognized that '[t]here is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors' " and " '[t]he habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled.' " *Id.* ¶ 92 (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)).

¶ 63        Accordingly, at the time Minniefield filed his initial postconviction petition, he "had the essential legal tools" required to raise his claim. *Moore*, 2023 IL 126461, ¶ 42 (Internal quotations omitted.); *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63 (concluding that the defendant could not establish cause for his failure to raise his proportionate penalties clause claim in his initial postconviction petition and stating that the claim "was always available to him in some form"). Although the most recent scientific research and developments may provide "some helpful support" for Minniefield's claim, he was not precluded from raising his claim earlier, and the unavailability of such research does not provide cause. *Haines*, 2021 IL App (4th) 190612, ¶ 51 (concluding that "[t]he new brain research referenced in *Miller* and *Harris* is merely some helpful support alongside a 'law of nature' that the supreme court acknowledged more than a century ago" and "[t]he emergence of some helpful support for a claim that already was raisable is not cause"); *Jones*, 2025 IL App (5th) 230511-U, ¶ 41 (concluding that "the unavailability of more current research did not prevent defendant from raising his proportionate penalties clause claim in an earlier proceeding as, at that time, he already had 'the essential legal tools' necessary to raise such

a claim"); *Searles*, 2024 IL App (1st) 210043-U, ¶¶ 14-15 (rejecting the argument that "advancements in the understanding of brain development in young adults provide[d] [the defendant] with cause," and concluding that "[w]hile more recent studies may provide better evidence for [the defendant's] argument, those studies do not provide new or undiscovered evidence that [the defendant] could not have presented earlier").

¶ 64        Minniefield relies on *People v. Blalock*, 2022 IL 126682, to support his argument that he established the necessary cause for his successive postconviction petition.

¶ 65        In *Blalock*, the petitioner sought leave to file a successive postconviction petition alleging that newly discovered evidence showed that the police officers engaged in a pattern and practice of misconduct and that his confession was the product of police coercion. *Id.* ¶¶ 1, 29. The court found that the defendant established cause, explaining that the factual basis of a coerced confession claim is "evidence of a pattern and practice of police misconduct." *Id.* ¶ 45. Therefore, the corroborating evidence necessary for a claim of police misconduct is "external to the defense," which is not easy to obtain. (Internal quotation marks omitted.) *Id.* ¶ 44 ("This evidence pertains to the conduct of the State's own agents, toward unknown individuals, during the investigation of other, usually unrelated, cases. The agents in question, the accused officers themselves, have every incentive to remain mum, if not to deny everything."); *Searles*, 2024 IL App (1st) 210043-U, ¶ 16 (explaining that "without corroborating evidence, a defendant is impeded from even raising a coerced confession claim" and "the insidious nature of police abuse makes gathering this evidence particularly difficult").

¶ 66        Here, unlike *Blalock*, Minniefield's proportionate penalties claim did not need "external corroborating evidence" before he could raise it. *Searles*, 2024 IL App (1st) 210043-U, ¶ 17 (stating that, unlike *Blalock*, the defendant "did not need external, corroborating evidence to

support his [proportionate penalties claim] before he could raise it"); *Robinson*, 2025 IL App (1st) 231419-U, ¶ 63 (where the petitioner alleged a proportionate penalties clause claim in his successive postconviction petition, the court concluded that, unlike *Blalock*, he "did not need 'external' corroborating evidence (*i.e.,* the new neuroscientific research) before he could raise" the claim). Rather, as previously discussed, the factual basis for his emerging adult proportionate penalties claim is that young adults are different from fully developed adults, which "Illinois courts have long recognized." *Searles*, 2024 IL App (1st) 210043-U, ¶ 17 (explaining that the factual basis for a sentencing challenge based on age is that "fully developed adults are different from young adults who are still developing" and noting that, this a distinction "Illinois courts have long recognized"). When Minniefield filed his initial postconviction petition, his youth at the time he committed the offense was known, and the fact that his age made him different from a fully developed adult was a "law of nature." (Internal quotation omitted.) *Id.* (concluding that the petitioner could not establish cause for his proportionate penalties clause claim and stating that "[t]he fact of his youth was already apparent, and the fact that his youth placed him on different footing than his adult counterparts was a 'law of nature.' " (quoting *Bradley*, 148 Ill. at 412).

¶ 67    Accordingly, Minniefield cannot establish cause for his failure to raise his proportionate penalties clause claim in his initial postconviction petition. Given our determination, we need not address whether he sufficiently established prejudice under the cause and prejudice test. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63 (where the defendant could not establish cause for failing to raise his proportionate penalties clause claim in his initial postconviction petition, the court did not determine whether he demonstrated prejudice).

¶ 68                    Postconviction Counsel

23

¶ 69 In the alternative, Minniefield contends that postconviction counsel provided unreasonable assistance. Minniefield argues that postconviction counsel's Illinois Supreme Court Rule 651(c) (eff July 1, 2017) certificate is deficient such that there is no presumption that counsel complied with the rule and provided reasonable assistance. Minniefield also argues that counsel provided unreasonable assistance for failing to amend the petition to adequately present his sentencing claim and to respond to recent changes in Illinois law cited in the State's motion to dismiss. He asserts that, if this court concludes he cannot show cause for failing to raise his proportionate penalties challenge earlier because the legal basis for the claim always existed, then postconviction counsel was unreasonable for failing to amend his petition to argue that trial counsel and direct appeal appellate counsel provided ineffective assistance of counsel for not raising the challenge.

¶ 70 In postconviction proceedings, a petitioner does not have a constitutional right to the assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Rather, a petitioner is "entitled only to the level of assistance granted by the Act," which our supreme court has defined as a " 'reasonable level of assistance.' " *Id.* (quoting *People v. Flores*, 153 Ill. 2d 264, 276 (1992)). This level of assistance is "less than that afforded by the federal and state constitutions." *Id.* In a postconviction context, unlike at trial, petitioners "have already been stripped of the presumption of innocence and have generally failed to obtain relief on direct review of their convictions." Therefore, in postconviction proceedings, "[c]ounsel is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *Id.*

¶ 71 To ensure that postconviction counsel provides a reasonable level of assistance to a petitioner under the Act, Rule 651(c) sets forth three duties for postconviction counsel. *People v. Smith*, 2020 IL App (1st) 181220, ¶ 15. This rule provides, in relevant part, as follows:

"The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

Postconviction counsel must comply with the rule (*Addison*, 2023 IL 127119, ¶ 21) but "substantial compliance" is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *People v. King*, 2023 IL App (1st) 220916, ¶ 44. It is petitioner's burden "to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 72 One way a petitioner may overcome this presumption is to demonstrate that postconviction counsel "did not make all necessary amendments to the *pro se* petition," which includes "making amendments that are necessary to overcome procedural bars." *Addison*, 2023 IL 127119, ¶ 21. However, the requirement contained in Rule 651(c) that postconviction counsel make necessary amendments does not mean that counsel is required to advance frivolous claims. *People v. Greer*, 212 Ill. 2d 192, 205 (2004). "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.* Rather, once postconviction counsel has reviewed the *pro se* petition

and identified which claims to pursue, reasonable assistance requires counsel to "shape the claims into the proper form." *Addison*, 2023 IL 127119, ¶ 26. Further, "[w]hile postconviction counsel is free to amend a petitioner's petition and add new claims, counsel is under no obligation to do so." *King*, 2023 IL App (1st) 220916, ¶ 49. "Counsel's obligation is limited to adequately presenting and supporting those constitutional claims raised by the petitioner." *Id*. We review the issues of whether postconviction counsel's Rule 651(c) certificate was facially deficient and whether counsel provided reasonable assistance *de novo*. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 43.

¶ 73    We first address Minniefield's assertion that counsel's Rule 651(c) certificate was deficient. Postconviction counsel's Rule 651(c) certificate stated as follows:

> "1. I have consulted with the petitioner by phone and mail to ascertain his contentions of deprivations of constitutional rights.
>
> 2. I have reviewed petitioner's *pro se* successive post-conviction petition filed January 12, 2017.
>
> 3. I have obtained and examined the record or proceedings including the common law record from his trial and conducted further additional investigations.
>
> 4. I have prepared a supplemental petition which serves to supplement his previously filed *pro se* successive petition for post-conviction relief.
>
> 5. I have prepared a Supplemental Filing of Verified Affidavit in Support of Petition for Postconviction Relief and am filing it along with this 651c certificate."

¶ 74    Minniefield takes issue with counsel's statement that he "obtained and examined the record or proceedings including the common law record from his trial and conducted further additional investigations." He asserts that this language shows that counsel reviewed the common law record but did not review the trial transcripts. We disagree. Counsel's statement that he

examined the "record or proceedings" combined with the language "including the common law record" supports that counsel examined the "record *of* proceedings," as required by the rule, not that he only reviewed the common law record. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017) (counsel must make a showing that counsel "has examined the record of the proceedings at the trial").

¶ 75        Minniefield also asserts that counsel did not certify that he reviewed the transcripts or records from sentencing. However, there is no requirement in the rule that postconviction counsel must provide a list of the specific transcripts examined. *People v. Wells*, 2024 IL App (5th) 200324-U, ¶ 28 ("Rule 651(c) contains no requirement that postconviction counsel list the specific transcripts or report of proceeding reviewed and the defendant fails to cite to any precedent that requires postconviction counsel to list all records examined.").

¶ 76        Minniefield also takes issue with counsel's statement that he "prepared a supplemental petition which serves to supplement his previously filed *pro se* successive petition for post-conviction relief." Minniefield asserts that counsel did not certify that he made "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions" and that the certificate therefore fails to track the language of Rule 651(c) or provide assurance that counsel made all necessary amendments to present his claims.

¶ 77        In *People v. Landa*, 2020 IL App (1st) 170851, ¶¶ 47-49, the court found that, although postconviction counsel's Rule 651(c) certificate did not precisely "mirror the language" of the rule, it substantially complied with the rule where it stated that counsel communicated with the defendant, reviewed the record and transcripts, and presented the defendant's claims. Likewise, here, although postconviction counsel's certificate did not mirror the exact language of the rule, we find that it substantially complied with the rule. Postconviction counsel stated that he consulted Minniefield by phone and mail "to ascertain his contentions of deprivations of constitutional

rights," he reviewed Minniefield's *pro se* successive postconviction petition, he examined the record of proceedings "including the common law record from his trial and conducted further additional investigations," and he "prepared a supplemental petition which serves to supplement his previously filed *pro se* successive petition for post-conviction relief." See *id.*; *People v. Richardson*, 382 Ill. App. 3d 248, 251, 257 (2008) (finding substantial compliance with Rule 651(c) where counsel's certificate did not "exactly mirror[] the language of the rule" and stated that counsel prepared a supplemental petition that "augment[ed]" petitioner's petition and "adequately complements [petitioner's] claims of deprivation of his constitutional rights").

¶ 78    Postconviction counsel's certificate substantially complied with Rule 651(c). As such, there is a rebuttable presumption that counsel provided reasonable assistance.

¶ 79    Minniefield argues that the record rebuts any presumption of reasonable assistance because counsel failed to make amendments necessary for an adequate presentation of his proportionate penalties claim. He states that, should this court conclude that *Clark* and *Moore* affirmatively foreclose him from establishing cause to bring his claim in a successive postconviction petition, then we should also conclude that postconviction counsel was unreasonable for "failing to overcome this procedural barrier." He asserts that, in response to the State's motion to dismiss, postconviction counsel should have amended his petition to alternatively argue that trial and direct appeal counsel were ineffective for not raising a proportionate penalties challenge.

¶ 80    Initially, we note that, as previously discussed, our supreme court has stated that under Rule 651(c), " '[p]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original). *Pendleton*, 223 Ill. 2d at 475 (quoting *People v.*

*Davis*, 156 Ill. 2d 149, 164 (1993)). Postconviction counsel was therefore not required to add any claims.

¶ 81　　Further, this court has explained that a defendant does not forfeit an as-applied emerging adult proportionate penalties clause claim, as here, when the claim is not raised on direct appeal and that a young adult should raise the claim in postconviction proceedings where an appropriate record can be developed. *People v. Johnson*, 2023 IL App (1st) 221359-U, ¶¶ 3, 37 (where the 21-year-old defendant raised a proportionate penalties clause claim in his initial postconviction petition, the court found that he did not forfeit his claim for failing to raise it on direct appeal, and stated that "[t]he courts have directed young adults that Proportionate Penalties Clause claims can and should be raised in postconviction proceedings where an appropriate record can be developed").

¶ 82　　Minniefield raised his as-applied proportionate penalties clause claim for the first time in a successive postconviction petition, and we have determined that he cannot establish cause for failing to raise the challenge in his initial postconviction petition, not on direct appeal. Minniefield does not provide authority or argument to support how claims of ineffective assistance of trial or appellate counsel for failing to raise a proportionate penalties clause claim at sentencing or on direct appeal would have overcome the necessary cause requirement for his successive postconviction petition. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 36 (to show cause to file a successive postconviction petition, a defendant must "identify an objective factor that impeded his ability to raise his claim in the initial petition"). Postconviction counsel did not provide unreasonable assistance where counsel did not add to the successive postconviction petition claims of ineffective assistance of trial and appellate counsel in that they failed to raise a proportionate penalties challenge at sentencing or on direct appeal.

¶ 83    Minniefield asserts that, to the extent the proportionate penalties clause claim is forfeited based on his failure to raise it in his prior postconviction proceedings, postconviction counsel was "duty-bound" to allege ineffective assistance of "prior counsel." In Minniefield's initial postconviction petition, he alleged that trial counsel was ineffective for failing to investigate and present witnesses and to request an involuntary manslaughter jury instruction. *People v. Minniefield*, No. 1-08-0649 (2010) (unpublished order under Illinois Supreme Court Rule 23); *Minniefield*, 2014 IL App (1st) 130535. As previously noted, postconviction counsel has no obligation to add new claims. See *King*, 2023 IL App (1st) 220916, ¶ 49 ("While postconviction counsel is free to amend a petitioner's petition and add new claims, counsel is under no obligation to do so."). Minniefield does not provide argument to support how a claim of unreasonable assistance of postconviction counsel who represented him in the initial postconviction proceedings would have overcome the cause requirement for his successive postconviction petition. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument in the appellant's brief must contain the appellant's contentions, the reasons therefor, and citation of the authorities); *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 36 (the cause requirement requires a defendant to "identify an objective factor that impeded his ability to raise his claim in the initial petition").

¶ 84    Minniefield also asserts postconviction counsel provided unreasonable assistance because he failed to respond to the State's motion to dismiss, in which the State argued that, following *Clark* and *Moore*, he could not establish cause. He asserts that, after the State filed its motion to dismiss, postconviction counsel could have amended the petition further to focus on the new factual basis for his claim.

¶ 85    On remand, following our previous decision, counsel filed a supplemental petition as well as a Rule 651(c) certificate, which, as previously discussed, provides a rebuttable

presumption that counsel provided reasonable assistance. After counsel filed the supplemental petition, our supreme court issued *Clark* and *Moore*.

¶ 86    Initially, we note that postconviction counsel is not required to advance frivolous claims. See *Pendleton*, 223 Ill. 2d at 472 (Rule 651(c) "does not require counsel to advance frivolous or spurious claims on defendant's behalf"). And, as previously discussed, Minniefield's argument that he was not only relying on *Miller* but was rather relying on the new factual basis for his claim, does not establish cause.

¶ 87    Minniefield asserts that, if postconviction counsel concluded that the petition's allegations had no merit, then counsel could either 1) stand on the *pro se* petition or 2) move to withdraw. See *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10 ("If the claims are frivolous, postconviction counsel has the option of standing on the allegations in the *pro se* petition or to withdraw as counsel."). Minniefield argues however that counsel took "affirmative action to harm" his position and "effectively confessed error" at the hearing on the motion to dismiss. At the hearing, postconviction counsel stated:

> "I do believe that those claims would rise to a substantial constitutional violation however I do acknowledge that the legal landscape has changed since the pro se filing and my supplemental filing and I do acknowledge that and I have discussed that with my client and I do offer that as an explanation as to why—to both the court and my client that I'm resting on the pro se filing and my supplemental filing in response to the state's motion to dismiss."

We do not agree with Minniefield that counsel's statements where counsel argues for the "substantial constitutional violation" demonstrate that counsel confessed error or took affirmative action to harm his position. See *cf. People v. Shortridge*, 2012 IL App (4th) 100663, ¶¶ 6, 14-15

(finding postconviction counsel provided unreasonable assistance where counsel did not stand on the petition or move to withdraw but stated he was "going to confess the motion to dismiss").

¶ 88    Accordingly, Minniefield has not met his burden of overcoming the presumption that postconviction counsel provided reasonable assistance.

¶ 89                                    III. CONCLUSION

¶ 90    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 91    Affirmed.

¶ 92    JUSTICE OCASIO, specially concurring:

¶ 93    The Illinois Supreme Court has made it crystal clear that, for the purpose of granting leave to file successive postconviction petitions, the substantial development in the law governing the sentencing of youthful offenders over the last 20 years does not provide cause to excuse a defendant's failure to anticipate those developments at the time of an initial postconviction petition. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 60 ("For defendant to properly plead the same claim then that is now in his successive petition requires a level of legal knowledge and expertise that veers into the improbable."). *Miller v. Alabama*, 567 U.S. 460 (2012), did more than create a rule of law barring mandatory life sentences for juveniles: it changed how we think about the law that governs the sentencing of youthful offenders. Moreover, it is not clear to me how Minniefield (or anyone else in his shoes) could have shown "how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to [his] specific facts and circumstances" (*People v. Harris*, 2018 IL 121932, ¶ 46) at a time when *Miller* did not yet exist.

¶ 94    In short, we are barring Minniefield from trying to vindicate a claimed constitutional right because, when he filed a postconviction petition in 2007, he did not raise a claim that

nobody would have expected him to, even with the benefit of hindsight. That result is extremely troubling, but it is what we are bound by precedent to do. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. I dutifully, but reluctantly, concur in the decision of the court.