2022 IL App (1st) 160907-U

SIXTH DIVISION
February 10, 2022

No. 1-16-0907

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 17108 |
| | ) | |
| PATRICK COMI, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Pierce and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's dismissal of defendant's successive petition for postconviction relief is affirmed where defendant failed to provide sufficient support for his actual innocence claim.

¶ 2    Defendant Patrick Comi appeals from the second-stage dismissal of his second successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). On appeal, he argues the circuit court erred in dismissing his petition where he made a substantial showing of actual innocence based on two affiants who averred he was not at the scene when the offense occurred. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Following a 1995 jury trial, Mr. Comi was found guilty of two counts of aggravated battery with a firearm upon a peace officer, two counts of attempted first degree murder, and one count of armed robbery, and sentenced to a total of 90 years' imprisonment. The convictions stemmed from a botched robbery of a currency exchange on February 15, 1992.

¶ 5      We affirmed on direct appeal and set forth a thorough description of the evidence at trial. *People v. Comi*, No. 1-95-3441 (1997) (unpublished order under Supreme Court Rule 23). Here, we summarize the trial evidence necessary to resolve the issue now on appeal, which concerns Mr. Comi's postconviction petition attaching affidavits from two witnesses who stated that he was not present at the robbery.

¶ 6      At trial, Rose Albarran testified that she was a cashier at a currency exchange on the 5900 block of North Clark Street. On February 15, 1992, at about 8:50 a.m., she was opening the exchange's front door to work a lone shift. The front door led into a customer area, and a "half door" led from the customer area into the back employee area. As Ms. Albarran opened the front door, a man placed a firearm to her back, told her, "[i]t is a hold up," and directed her to open the safes in the employee area. She opened the safes, saw another person standing in the customer area, and could tell there was a third person behind her out of view. The men ordered her to the ground and tied her hands behind her back. The police arrived and she heard gunshots. Afterwards, a police officer untied her.

¶ 7      Harlan Smolin, the owner of the currency exchange, testified that he went to the exchange that afternoon and determined $200 was missing. There was an orange bag left at the scene that contained $500 in quarters. The orange bag was inside a white plastic bag that contained about $17,000.

¶ 8    Karen Luc identified Mr. Comi in court. She testified that at about 9 a.m., she parked her vehicle in front of the currency exchange and exited. She heard a male voice say, "[g]et down," and heard gunshots. Ms. Luc got down and, from five or six feet away, saw Mr. Comi run past her with a firearm in his hand. On the evening of February 17, 1992, Ms. Luc saw a picture of Mr. Comi on the television news, called the police, and signed a photograph of Mr. Comi that the police showed her. On June 28, 1994, she went to the police station and identified Mr. Comi from a lineup.

¶ 9    Chicago police officer Jacqueline Healy also identified Mr. Comi in court. She testified that at about 9 a.m., she responded to the scene, entered the exchange, and announced her presence. The door to the employee area opened. A man, who was crouched on the ground about 10 feet from Officer Healy, shot her in the stomach with a semiautomatic firearm. Officer Healy shot back and radioed for help. Behind the first man, she saw Mr. Comi holding a revolver and Toywell Mitchell holding a semiautomatic firearm. The three men shot at her several times. Officer Healy was shot in the left shoulder by Mr. Mitchell, threw herself to the ground, and remained motionless. From the ground, Officer Healy saw the men exit through the exchange's shattered window. On June 28, 1994, she identified Mr. Comi from a lineup.

¶ 10    Chicago police officer James Schodtler testified that at about 9 a.m., he received a signal that a police officer at the currency exchange needed assistance "right away" and stopped his vehicle two or three doors from the exchange. He heard shots fired, saw windows break, and exited his vehicle. Jason Francis crawled out of the exchange with a semiautomatic handgun and ran down the sidewalk. Officer Schodtler pointed his firearm at Mr. Francis, yelled "police," and told him to stop, but Mr. Francis continued running. Officer Schodtler then fired at Mr. Francis. Moments later, Officer Schodtler heard numerous gun shots before falling to the ground. He had

been shot in his right upper hip.

¶ 11    Chicago police forensic investigator Thomas Reynolds testified that he and his partner Officer James Hogan arrived at the scene at about 9:15 a.m. where they recovered evidence from inside and outside the exchange. He collected a white plastic bag, inside of which was about $17,000 in currency, and an orange bag containing $500 in quarters.

¶ 12    Rupert Pottinger testified that he knew Mr. Comi's uncle, Steve Harvey, and had met Mr. Comi. On February 15, 1992, at about 10 a.m., Mr. Harvey called Mr. Pottinger and asked him to come to his house. When Mr. Pottinger arrived, Mr. Comi and Mr. Harvey asked him to drive Mr. Comi and two other men, one of whom was named Bally, out of Chicago. Bally had a bandaged hand and arm. Mr. Pottinger drove the three men to New York City, where they arrived at around 2:30 or 3 a.m., and dropped Bally off at a hospital. Mr. Comi told Mr. Pottinger they had gotten in a "shootout with some people." Mr. Pottinger drove back to Chicago alone and was later arrested and charged with aiding a fugitive.

¶ 13    Chicago police sergeant Michael O'Brien testified that on February 15, 1992, at 5:30 p.m., he received the description and license plate number of a vehicle suspected to be involved in the incident. After midnight, he drove near the intersection of West Farwell Avenue and North Ridge Boulevard and observed an empty silver Sterling matching the description with a Virginia license plate.

¶ 14    Chicago police detective Lawrence Aiken testified that on February 16, 1992, officers learned the Sterling was registered to Mr. Comi in Virginia. That evening, Detective Aiken went to a basement apartment that was two blocks from where the Sterling was found. The apartment was occupied by a woman and Mr. Harvey. In a garbage dumpster behind the apartment, Detective Aiken found a bag containing shoes, a jacket and sweatshirt with blood and corresponding bullet

holes in the left sleeve, some carpet, and other clothing items. Mr. Francis was eventually arrested in New York, and Mr. Mitchell was arrested later that summer in California.

¶ 15    Chicago police forensic investigator Ronald Ferrari testified that on February 16, 1992, at about 2 p.m., he and his partner, Officer Tom Ginnely, photographed and recovered the Sterling, which had bloodstains throughout the interior. Fingerprints were lifted from the vehicle, including a fingerprint from the inside door handle to the rear driver-side door. Inside the glove compartment were "various documents" bearing Mr. Comi's name.

¶ 16    The State presented several fingerprint witnesses. Chris Harris, a police latent fingerprint developer, testified that he received the orange bag recovered from the scene of the shooting and lifted a fingerprint from the bag's upper portion. Steven Mostacchio, a Chicago police lockup keeper, testified that he fingerprinted Mr. Comi. Theatrice Patterson, a Chicago police latent fingerprint examiner, testified that he received the inked fingerprints of Mr. Comi, Mr. Mitchell, and Mr. Francis, and was able to match each of their prints to some piece of physical evidence. Officer Patterson found that Mr. Comi's fingerprint matched the print lifted from the orange bag, Mr. Francis's fingerprints matched two fingerprints lifted from the white plastic bag, and Mr. Mitchell's fingerprint matched the print lifted from the silver Sterling's door handle.

¶ 17    Federal Bureau of Investigation special agent Wilfred Baptiste testified that in January 1994, he was assigned to locate Mr. Comi. In the early morning of January 28, 1994, Mr. Comi was arrested in an apartment in the Bronx borough of New York City.

¶ 18    The defense called Michelle Latty, who testified that she lived in the Bronx, knew Mr. Comi by the name Byron Mitchell, and had a daughter with him. She testified that Mr. Comi spent the night with her on February 14, 15, and 16, 1992. In the early morning of February 16, Mr. Comi woke up, put on clothes, said he would be back, and left.

¶ 19    On cross-examination, Ms. Latty testified that in February 1992, she saw Mr. Comi two or three times a week. Mr. Comi drove "several" vehicles, but Ms. Latty was not aware that he owned a silver Sterling with a Virginia license plate. She did not know Mr. Comi lived in Virginia but knew he had visited Virginia before. When Mr. Comi left her place on the morning of February 16, he said he had to take a friend to the hospital. He returned at around 8 or 9 a.m. that same morning.

¶ 20    Mr. Comi testified that his full name is Byron Fitzgerald Mitchell, but he is also known as Patrick Comi. He lived with his mother in the Bronx in February 1992 and had part ownership in a carpet cleaning service in Virginia. On February 6, 1992, he lent a silver Sterling to Mr. Francis and never saw the vehicle again. He identified the white plastic bag that was recovered at the scene of the robbery as having come from the trunk of that car.

¶ 21    According to his testimony, on February 14, 1992, Mr. Comi spent the whole day at Ms. Latty's apartment and remained there until February 15 at about 9:30 a.m. He returned there on the 15th at about 11 p.m. On February 16, at about 3 a.m., Mr. Francis drove by and honked his horn. Mr. Comi looked outside and saw Mr. Francis, Mr. Mitchell, and Mr. Pottinger in a jeep. Mr. Francis was "wrapped up" in coats and looked like he was in pain. Mr. Comi asked him what was wrong. He said he was robbed and had been shot, and asked Mr. Comi to take him to the hospital, which he did. Mr. Comi denied that he had any involvement in the alleged crimes.

¶ 22    On cross-examination, Mr. Comi testified that after he took Mr. Francis to the hospital, he learned "what happened" two days later and learned that the police were looking for him about five days "after that." At that point, he went to London for about six months because he was scared and then went to Jamaica for about one year. He then went to Florida for three or four days and returned to New York in October 1993 to "turn [him]self in and get [his] life together." However,

he did not turn himself in.

¶ 23    Mr. Comi explained that he thought police were looking for him because his vehicle was used. On the weekend of the incident, no one else was in Ms. Latty's apartment with Mr. Comi and Ms. Latty. The State asked whether anyone else could have verified where Mr. Comi was on the date of the incident, and Mr. Comi stated his "friend in Queens" could have verified, as well as the landlord who saw him there.

¶ 24    The jury found Mr. Comi guilty of one count of armed robbery as to Ms. Albarran, two counts for aggravated battery with a firearm upon Officers Healy and Schodtler, and two counts for the attempted first degree murder of Officers Healy and Schodtler.

¶ 25    On September 8, 1995, the trial court sentenced Mr. Comi to a total of 90 years' imprisonment, which consisted of concurrent extended terms of 60 years for each of the two attempted first degree murder counts, to run consecutively with a 30-year term for the armed robbery count.

¶ 26    We affirmed on direct appeal, rejecting Mr. Comi's arguments that the prosecutor improperly bolstered the testimony of a State's witness and that his extended-term sentence was improper. *People v. Comi*, No. 1-95-3441 (1997) (unpublished order under Supreme Court Rule 23).

¶ 27    Since that time, Mr. Comi filed several unsuccessful collateral challenges, in all of which we affirmed the circuit court on appeal. *People v. Comi*, Nos. 1-98-1782 (2000) (affirming the summary dismissal of Mr. Comi's initial postconviction petition under the Act); 1-01-1096 (2003) (affirming the dismissal of Mr. Comi's second postconviction petition); 1-04-3120 (2006) (granting Mr. Comi's counsel leave to withdraw and affirming the dismissal of Mr. Comi's petition for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000))

(unpublished orders under Supreme Court Rule 23).

¶ 28    On November 8, 2016, after filing the postconviction petition at issue on this appeal, Mr. Comi also filed a motion for leave to file another successive postconviction petition, as well as a motion for forensic testing. On appeal, we granted Mr. Comi's counsel leave to withdraw and affirmed the denial of both filings. *People v. Comi*, No. 1-17-0670 (2021) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 29    This appeal dates back to January 2006, when Mr. Comi filed a *pro se* section 2-1401 petition. On January 25, 2006, the circuit court appointed counsel for Mr. Comi. In February 2006, Mr. Comi filed a *pro se* motion to file an amended section 2-1401 petition, alleging the State amended his indictment by instructing the jury as to elements not in his charging instrument, causing him to be convicted of "elements" for which he was not charged. He also claimed that one of the jury instructions was "invalid," "ambiguous, misleading, and confusing," rendering it unconstitutional; that the trial judge improperly had "*ex parte* communication" with the jury during deliberations; and that the prosecutor made prejudicial comments during closing arguments. On September 13, 2006, appointed counsel withdrew, and Mr. Comi retained a private attorney, who filed an appearance.

¶ 30    On March 21, 2014, Mr. Comi, through his private attorney, filed an amended petition for relief under both section 2-1401 and the Act, incorporating the claims from his *pro se* amended section 2-1401 petition. Mr. Comi additionally alleged that he was actually innocent, based on the affidavits of Mr. Harvey and Mr. Francis, both of whom were not available at the time of trial because they were involved in their own criminal cases and could have invoked fifth amendment privileges. He also claimed that had his attorney hired an independent expert to analyze the fingerprint evidence on the orange bag at the scene, he would have been proven actually innocent

because he "was never in this currency exchange and never touched this bag."

¶ 31    Attached to the petition was the affidavit of Mr. Harvey, which was signed by Mr. Harvey and dated January 7, 2006. In that affidavit, Mr. Harvey averred that he knew the people who committed the armed robbery, and that he was falsely accused of the offense based on "the admission of coercive statements introduced at [Mr. Harvey's] trial." He stated that Mr. Comi was also falsely accused of the offense "in that he was not in Chicago" on February 15, 1992, and "any testimony I made contrary to this was based on the advice of my trial counsel."

¶ 32    Mr. Comi also attached to his petition the "affidavit" of Mr. Francis, which was signed, but not dated or notarized. In this handwritten document, Mr. Francis stated that a notarized copy of the affidavit was "forthcoming." He further stated that Mr. Comi "had nothing to do with the *** crime," and Mr. Comi was "never at no time in Chicago, Illinois at the time of this *** crime." He claimed that he borrowed Mr. Comi's vehicle and drove it to Chicago, and the vehicle was used in the offense. He then returned to New York and told Mr. Comi he no longer had the vehicle. Mr. Comi noticed Mr. Francis was bleeding and took him to the hospital. Mr. Francis averred that after it was discovered that Mr. Comi's vehicle was involved, he was "pressured to implicate him in the crime." He further stated that Mr. Comi "had no knowledge that his car was used in this offense."

¶ 33    On May 19, 2014, the circuit court granted Mr. Comi leave to file the successive petition on the basis that the prohibition against multiple postconviction petitions, and the cause and prejudice standard, do not apply to claims of actual innocence. The petition proceeded to second-stage postconviction proceedings.

¶ 34    On January 26, 2015, Mr. Comi filed a "submission of a notarized copy of Jason Francis's affidavit," which included a copy of Mr. Francis's affidavit notarized on January 9, 2015, and a second affidavit stating the contents of Mr. Francis's first affidavit were true and correct.

¶ 35    Also on January 26, 2015, the State filed a motion to dismiss Mr. Comi's successive postconviction petition, arguing in relevant part that Mr. Comi (1) failed to explain why he could not have presented the affidavits of Mr. Harvey and Mr. Francis in his *pro se* 2006 petition, and (2) failed to show that he exercised due diligence in presenting his claim. The State also argued the affidavits did not constitute newly discovered evidence, as they set forth facts Mr. Comi would have known at or prior to trial. As to Mr. Harvey's affidavit, the State asserted that Mr. Harvey failed to provide any facts supporting his conclusions that Mr. Comi was falsely accused and not in Chicago at the time of the offense. Mr. Harvey also did not explain why he did not come forward until 2006, more than 10 years after Mr. Comi's conviction. As to Mr. Francis's affidavit, the State argued that Mr. Francis likewise failed to explain why he did not come forward earlier. The State further asserted that because of the lack of a date on the affidavit, there was no way of knowing when Mr. Comi received the affidavit.

¶ 36    On May 13, 2015, Mr. Comi filed a response to the State's motion, arguing in relevant part that Mr. Harvey and Mr. Francis were unavailable earlier because their appeals were pending at that time. He also asserted the affidavits were material and not merely cumulative because they were relevant to the question of who was present when the offense was committed, and the evidence was "sufficiently 'conclusive' " because "if credited" by a trier of fact it "could change the outcome."

¶ 37    On June 18, 2015, the circuit court heard arguments on the State's motion to dismiss. On February 3, 2016, it entered a written order dismissing Mr. Comi's petition as to both his section 2-1401 and postconviction claims. The court found in relevant part that the affidavits of Mr. Harvey and Mr. Francis did not constitute newly discovered evidence, as both affiants could have testified at trial. The court also found it was unlikely that any new evidence would change the

outcome of Mr. Comi's trial, and the record rebutted the affiants' claims that Mr. Comi was not at the scene.

¶ 38                                    II. JURISDICTION

¶ 39     The circuit court dismissed Mr. Comi's postconviction petition on February 3, 2016, and Mr. Comi timely filed his notice of appeal from that dismissal on February 23, 2016. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 40                                    III. ANALYSIS

¶ 41     On appeal, Mr. Comi contends that the circuit court erred in dismissing his successive petition, where he set forth a substantial showing of actual innocence supported by the affidavits of Mr. Harvey and Mr. Francis.

¶ 42     The Act provides a three-stage method for persons serving criminal sentences to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). Generally, the Act contemplates the filing of only one postconviction petition, and section 122-3 of the Act provides that any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. *People v. Orange*, 195 Ill. 2d 437, 449 (2001); 725 ILCS 5/122-3 (West 2014). However, the procedural bar against successive proceedings will be relaxed on either of two grounds: (1) "where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding"; and (2) "where the petitioner asserts a fundamental miscarriage of justice based on actual innocence." *People v. Robinson*, 2020 IL 123849, ¶ 42. Where a request for leave to file a successive petition is granted, as is the case

here, the petition is docketed for second-stage proceedings. *Id.* ¶ 43.

¶ 43    At the second stage of proceedings, the State is permitted to file responsive pleadings, and "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The second stage of postconviction review tests the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 35. We generally review *de novo* the circuit court's second-stage dismissal of a postconviction petition. *Pendleton*, 223 Ill. 2d at 473.

¶ 44    To establish an actual innocence claim, the supporting evidence must be (1) newly discovered, (2) material and not merely cumulative, and (3) "of such conclusive character that it would probably change the result on retrial." *People v. Edwards*, 2012 IL 111711, ¶ 32. Newly discovered means "the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence." *People v. Coleman*, 2013 IL 113307, ¶ 96. Evidence is material if it is "relevant and probative of the petitioner's innocence," and it is noncumulative if it "adds to what the jury heard." *Id.* Evidence is conclusive if it "would probably lead to a different result" when considered along with the trial evidence. *Id.* The conclusiveness of the new evidence is the most important element of an actual innocence claim. *People v. Sanders*, 2016 IL 118123, ¶ 47.

¶ 45    As our supreme court made clear in *Robinson*, the conclusiveness requirement means that the court must find that the new evidence, when considered along with the trial evidence, would "probably" lead to the defendant's acquittal. 2020 IL 123849, ¶ 47. When considering the conclusiveness of newly discovered evidence, the question is "whether the evidence supporting

the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48.

¶ 46    We find the circuit court properly dismissed Mr. Comi's actual innocence claim because these two affidavits were simply insufficient to place the trial evidence in a different light and they do not undermine confidence in the judgment of guilty.

¶ 47    Mr. Harvey and Mr. Francis both provided affidavits that Mr. Comi was not in Chicago when the offense occurred. Specifically, Mr. Harvey averred that both he and Mr. Comi were "falsely accused of the above crime, in that [Mr. Comi] was not in Chicago on the above date," and that any testimony he gave to the contrary was "based on the advice of [his] trial counsel." Similarly, Mr. Francis averred that Mr. Comi was not in Chicago when the offense occurred, and that he had borrowed Mr. Comi's car and used it in the offense, without Mr. Comi's knowledge.

¶ 48    These affidavits, both of which are lacking in detail, are insufficient to warrant further proceedings. As outlined above, Mr. Comi was shown to have been present in Chicago by two witnesses at the scene who positively identified him. In addition, the State presented the testimony of Mr. Pottinger who testified that he drove Mr. Comi and two others from Chicago to New York at the request of Mr. Harvey right after the crime occurred. Mr. Pottinger also testified that during that trip, Mr. Comi told Mr. Pottinger that they had gotten into a shootout with some people in Chicago. There was also expert testimony that Mr. Comi's fingerprints were recovered from an orange bag full of quarters recovered at the scene. While Mr. Comi suggested to the jury, just as he argues on appeal, that those prints might have come from the white plastic shopping bag which he had testified was in the trunk of his car that he loaned to Mr. Francis, the jury clearly rejected that theory. Also, as the State notes, the only prints recovered on the white plastic bag belonged to Mr. Francis.

¶ 49 In light of the strong evidence presented at trial of Mr. Comi's guilt, we cannot find that the unsupported, conclusory statements of Mr. Harvey and Mr. Francis place the trial evidence in a different light or undermine the court's confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 48; see also *People v. Jones*, 2017 IL App (1st) 123371, ¶¶ 49-57 (an affidavit that was "devoid" of key details was not likely to change the outcome of the defendant's trial, where the State presented several witnesses and physical evidence of the defendant's guilt). We thus conclude that the circuit court properly dismissed Mr. Comi's successive postconviction claim.

¶ 50                                          IV. CONCLUSION

¶ 51 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 52 Affirmed.