2026 IL App (1st) 241958-U

FIFTH DIVISION
May 22, 2026

No. 1-24-1958

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94CR1710801 |
| | ) | |
| PATRICK COMI, | ) | Honorable |
| | ) | Jennifer F. Coleman, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justice Oden Johnson concurred in the judgment.
Presiding Justice Mitchell concurred only in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's second-stage dismissal of defendant's successive postconviction petition where he has not established cause to bring his claim that his sentence violates the proportionate penalties clause.

¶ 2    Defendant Patrick Comi appeals from the circuit court's second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He argues that his petition made a substantial showing that his 90-year sentence, imposed for an offense he committed when he was 21 years old, violated the proportionate penalties clause

of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and that he established cause and prejudice for bringing the claim in a successive petition. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Trial and Sentencing

¶ 5     Following a 1995 jury trial, Mr. Comi was found guilty of two counts of aggravated battery with a firearm upon a peace officer, two counts of attempted first degree murder, and one count of armed robbery, and sentenced to 90 years in prison. As we have thoroughly recited the facts of Mr. Comi's offenses in prior decisions (see *People v. Comi*, 2022 IL App (1st) 160907-U), we only briefly summarize the State's trial evidence here.

¶ 6     Rose Albarran testified that, on February 15, 1992, she was an employee at a currency exchange in Chicago, and opened the exchange around 8:50 a.m. that morning. As she did so, a man placed a firearm to her back and told her, "[i]t is a holdup." When she opened the door, an alarm was activated, which she deactivated by entering a code that also signaled to the alarm company that something was wrong. The man directed her to open the exchange's safes, which she did. She then noticed two other men in the exchange. The men ordered her to the ground and tied her hands behind her back. A police officer arrived, she heard gunshots, and an officer later untied her.

¶ 7     Chicago police officer Jacqueline Healy testified that she responded to the currency exchange during the holdup, entered it, and announced her presence. A man inside the exchange shot her in the stomach. She shot back and radioed for help. She reached for the door to the currency exchange, but it had locked and she could not leave. Behind the first man, she saw another man holding a revolver, whom she identified as Mr. Comi. She also saw another man with a gun, whom she identified as Toywell Mitchell. Mr. Comi and Mr. Mitchell shot their guns in an

apparent attempt to break the currency exchange's windows. Officer Healy testified that "[t]here were shots being fired everywhere." A shot from Mr. Mitchell struck her in the shoulder, and she dropped to the ground and lay motionless. The men ran out one of the shattered windows.

¶ 8    Chicago police officer James Schodtler testified that he received a signal that an officer at the currency exchange needed immediate assistance. He stopped his vehicle near the exchange, heard gunshots, and saw windows breaking. He saw a man, whom he identified as Jason Francis, crawl out of the exchange with a handgun and run away. Officer Schodtler fired at Mr. Francis as Mr. Francis ran. Officer Schodtler heard numerous other gunshots and was shot in his hip.

¶ 9    A witness who was outside the currency exchange identified Mr. Comi as a person who ran past her with a firearm. Another witness testified that he heard shots, saw three men quickly enter a car and drive away, wrote down that car's license plate number, and gave the number to nearby police officers. Officers discovered that the vehicle was registered to Mr. Comi. Evidence discovered at the currency exchange included an orange bag containing $500 in quarters, and Mr. Comi's fingerprint was matched to a print lifted from the bag.

¶ 10    Rupert Pottinger, who knew Mr. Comi's uncle, testified that, later that day and at the request of Mr. Comi's uncle, he drove Mr. Comi and two other men from Chicago to New York City. One of the other men had a bandaged arm, and Mr. Comi told Mr. Pottinger that they had gotten in a "shootout with some people." An FBI agent testified that he arrested Mr. Comi in New York City on January 28, 1994.

¶ 11    The jury found Mr. Comi guilty of two counts of attempted first degree murder and two counts of aggravated battery with a firearm for the shots fired at Officers Healy and Schodtler, and one count of armed robbery of Ms. Albarran.

¶ 12    Mr. Comi's sentencing hearing occurred on September 8, 1995. Officer Schodtler testified

3

that the shot to his hip resulted in his missing work for 14 months and nerve damage that continued to cause pain and require treatment. Mr. Comi's counsel entered two letters in mitigation, which are included in the record on appeal but are illegible. In aggravation, the State contended that no mitigating factors applied to Mr. Comi and that his offense involved brutal or heinous acts indicative of wanton cruelty. Defense counsel countered that Mr. Comi had no criminal convictions, was "doing what it takes to obtain a G.E.D.," and was a talented artist.

¶ 13      The court stated that the goals of sentencing included punishment, deterrence, and possible rehabilitation. The court referred to Mr. Comi and his co-offenders as "vicious thugs," and emphasized that "the primary message that must be carried from [the] courtroom" was that no one who committed conduct like Mr. Comi's should "expect to be treated leniently or mercifully." The court recognized that Mr. Comi lacked a criminal record but found that his offenses were accompanied by heinous behavior indicative of wanton cruelty. The court imposed on him the maximum 90-year sentence: 60 years on each of the two counts of attempted murder, to be served concurrently with each other, and 30 years for armed robbery, to be served consecutively. The aggravated battery charges merged.

¶ 14                    B. Direct Appeal and Prior Collateral Challenges

¶ 15      We affirmed on direct appeal, over Mr. Comi's arguments that the prosecutor improperly bolstered a witness's testimony and that the court erred in imposing an extended-term sentence. *People v. Comi*, No. 1-95-3441 (1997) (unpublished order under Supreme Court Rule 23).

¶ 16      In 1998, Mr. Comi filed his initial petition for relief under the Act. He claimed that his counsel on direct appeal provided ineffective assistance by failing to argue that his sentence was excessive given his youth and lack of criminal history. He argued that, under the proportionate penalties clause, his sentence must be proportionate to the nature of his offense and the possibility

of his rehabilitation, and the trial court "lost sight of the goal of rehabilitation." Mr. Comi also claimed that his sentence was disparate to those of his co-offenders, and that his counsel on direct appeal provided ineffective assistance by failing to raise that argument.

¶ 17    The circuit court summarily dismissed Mr. Comi's petition. On appeal, Mr. Comi argued only that he had stated the gist of meritorious claims of disparate sentencing and ineffective assistance of appellate counsel for failing to raise the disparate sentencing issue. He did not contend that his appellate counsel was ineffective for failing to argue that his sentence was excessive under the proportionate penalties clause. We affirmed. *People v. Comi*, No. 1-98-1782 (2000) (unpublished order under Supreme Court Rule 23).

¶ 18    Mr. Comi filed several more collateral challenges that the circuit court rejected, and that we affirmed on appeal. See *People v. Comi*, Nos. 1-01-1096 (2003) (affirming the dismissal of Mr. Comi's second postconviction petition); 1-04-3120 (2006) (granting Mr. Comi's counsel leave to withdraw and affirming the dismissal of his petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000))); 1-17-0760 (2021) (granting counsel leave to withdraw and affirming the denial of Mr. Comi's motions for leave to file a successive petition under the Act and for forensic testing under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2016))); and 2022 IL App (1st) 160907-U (affirming the second-stage dismissal of Mr. Comi's successive petition under the Act) (unpublished orders under Supreme Court Rule 23).

¶ 19              C. Proceedings on Mr. Comi's Current Successive Petition

¶ 20    On September 8, 2020, Mr. Comi, through counsel, filed the motion for leave to file a successive postconviction petition under the Act that is at issue here. He argued that his 90-year sentence was an unconstitutional *de facto* life sentence under the eighth amendment to the United

States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause, given his age (21 years old) and immaturity at the time of the offense and his rehabilitative potential. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, he contended that the sentence failed to reflect either his lessened cognitive capacity as an emerging adult or the goal of restoring him to useful citizenship. He noted that he had no prior convictions, and the evidence did not establish that he was the one who shot the officers.

¶ 21    Mr. Comi's claim rests on evolving science related to brain development. He cites studies that have concluded that the brain, especially the prefrontal cortex regulating impulse control and judgment, continues to mature until a person's mid-20's. These studies conclude that persons between the ages of 18 and 25 are more like children than older adults. Based on them, Mr. Comi argues that emerging adults have heightened sensitivity to social, economic, and environmental influences that can undermine healthy brain development, and that chronic adolescent trauma can negatively affect a young adult's decision making. He argues that the evolving science on brain development that informed *Miller* applies to his specific facts and circumstances.

¶ 22    Mr. Comi attached several documents in support of his argument that his personal circumstances resulted in his being, at age 21, more like a juvenile than an adult. One was a personal statement describing his traumatic upbringing. The statement described how, during his childhood in Jamaica, when he was five or six years old, he and his pregnant mother witnessed a man be partially decapitated with a machete, the stress of which caused his mother to go into early labor and deliver a stillborn baby. When he was seven or eight years old, he was molested by a priest. At some point, his mother left for the United States, and his stepmother and uncles physically and emotionally abused him. He struggled at school because he often went hungry, and the teachers whipped him for incorrectly answering questions. He started smoking marijuana every

day at age 11. When he was 16 years old, he moved to live with his mother in New York City, in a neighborhood dominated by crack cocaine dealers where he heard frequent gunshots. In jail following his arrest in this case, members of a gang had beaten him until he joined their gang. Mr. Comi attached an "Adverse Childhood Experience (ACE) Questionnaire," on which he scored an 8 out of 10.

¶ 23   Mr. Comi also submitted a letter from Dr. James Garbarino that provided a "developmental analysis" of Mr. Comi. Dr. Garbarino explained that the research showing that brain maturity solidifies in a person's mid-20's rests on brain-imaging technology that "did not become readily available until the late 1990s," and was not widely used for developmental studies "until half a decade later." He noted that Mr. Comi's score of eight on the ACE questionnaire was in the 99th percentile of the general population. Based on Mr. Comi's background, Dr. Garbarino opined that the following *Miller*-based sentencing mitigation factors applied to him: his decision making was impaired by immaturity, impetuosity, lesser capacity to consider future consequences, and related characteristics; he had a traumatic family and home environment from which he could not extricate himself; his youth and susceptibility to peer pressure played a role in the circumstances of the offense; and he had rehabilitative potential.

¶ 24   Mr. Comi also attached to his motion educational certificates he had earned, an affidavit from his wife testifying to his character, and examples of his poetry and artwork.

¶ 25   Mr. Comi argued that he had demonstrated "cause" under the cause-and-prejudice test required for filing a successive petition under the Act because *Miller* and its progeny had created a new rule of law that was unavailable at the time of his direct appeal, and emerging scientific research indicated that it should be extended to young adults as well as juveniles. He further argued that the trial court failed to consider his rehabilitative potential when sentencing him.

¶ 26     The circuit court granted Mr. Comi's motion for leave to file his petition and advanced the petition to the second stage of proceedings under the Act.

¶ 27     The State moved to dismiss Mr. Comi's petition, arguing that our supreme court had held that *Miller* did not create a new rule providing cause for a defendant to raise a proportionate-penalties claim in a successive petition under the Act. The State further argued that Mr. Comi's eighth amendment challenge lacked merit because he was over 18 years old when he committed his offense and *Miller* only supported eighth amendment challenges for juvenile offenders.

¶ 28     Mr. Comi filed a response, again contending that science supported extending the principles espoused in *Miller* to emerging adults.

¶ 29     At a hearing on the State's motion, Mr. Comi's counsel acknowledged that *Miller*, and the caselaw that grew from it, did not provide cause for him to file his successive petition. However, he argued that cause was satisfied by the brain science research establishing that a person's brain is not fully formed until their mid-20's, some of which was based on brain-imaging technology that was not previously available.

¶ 30     The circuit court granted the State's motion and dismissed Mr. Comi's petition. In a written order, the court found that Mr. Comi's eighth amendment claim failed because *Miller* only applied to juvenile offenders. The court further found that *Miller* and its progeny only offered Mr. Comi "helpful support" for his proportionate-penalties claim and did not provide cause to raise that claim in a successive petition. Even if Mr. Comi established cause, the court concluded that Mr. Comi could not establish prejudice because his sentence did not shock the moral sense of the community, and therefore did not violate the proportionate penalties clause.

¶ 31     This appeal follows.

¶ 32                                    II. JURISDICTION

¶ 33     The circuit court dismissed Mr. Comi's petition on September 11, 2024, and he timely filed a notice of appeal on September 17, 2024. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), which governs appeals from final judgments in postconviction proceedings.

¶ 34                                        III. ANALYSIS

¶ 35     Mr. Comi appeals from the circuit court's second-stage dismissal of his successive petition under the Act. He argues that he made a substantial showing that his 90-year sentence, for an offense he committed when he was 21 years old, is an unconstitutional *de facto* life sentence under the proportionate penalties clause due to his age and immaturity at the time of the offense, and that he established cause and prejudice to bring the claim in a successive petition.

¶ 36                          A. Standards for Proceedings Under the Act

¶ 37     The Act allows a criminal defendant to claim that a substantial violation of his constitutional rights occurred at his trial or sentencing. *People v. Spencer*, 2025 IL 130015, ¶ 46. It divides postconviction proceedings into three stages. *People v. Bailey*, 2017 IL 121450, ¶ 18. At the first stage, the circuit court reviews whether the defendant's petition states the "gist of a constitutional violation or is either frivolous or patently without merit." *Id.* (citing 725 ILCS 5/122-2.1(a)(2) (West 2014)). At the second stage, if the defendant is *pro se*, indigent, and wishes to be appointed counsel, the court appoints him counsel, who may amend the petition as necessary. *Id.* (citing 725 ILCS 5/122-4 (West 2014) and *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001)). The court then "determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* If the petition advances to the third stage, the court holds an evidentiary hearing and decides whether to grant relief. *Id.* (citing 725 ILCS 5/122-

9

6 (West 2014)).

¶ 38    The Act contemplates the filing of only one petition. 725 ILCS 5/122-1(f) (West 2020). A court will grant a defendant leave to file a successive petition, however, if the defendant can demonstrate both cause and prejudice for failure to raise the claim in his initial petition. *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 35. A defendant demonstrates cause by offering an objective factor that impeded his ability to raise the claim in his initial petition, and prejudice by demonstrating that the issue "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

¶ 39    If the defendant adequately alleges cause and prejudice, the petition advances directly to the second stage of proceedings under the Act. *People v. Thames*, 2021 IL App (1st) 180071, ¶ 78. At this second stage, "the State can seek dismissal of the petition on any grounds," including, as here, "the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *Id.* We review *de novo* a circuit court's dismissal of a postconviction petition at the second stage. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 40            B. The Eighth Amendment and the Proportionate Penalties Clause

¶ 41    Here, Mr. Comi claimed in his successive petition that his sentence violated the eighth amendment and the proportionate penalties clause.

¶ 42    The eighth amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. In *Miller*, 567 U.S. at 465, 489, the United States Supreme Court concluded that a mandatory life sentence without parole for a juvenile—someone who was younger than 18 years old at the time of the offense—violates that prohibition. The Court emphasized the importance of considering a juvenile offender's age and "the wealth of characteristics and circumstances attendant to it," during sentencing. *Id.* at 476. *Miller* provided several factors that a court should

consider when sentencing a juvenile offender, such as his level of maturity at the time of the offense, whether he was subject to familial or peer pressure, and the potential dysfunction of his family and home environment. *Id.* at 477-78. Our legislature has since codified those factors. See 730 ILCS 5/5-4.5-105(a) (West 2024). And our supreme court has concluded that the constitutional protections afforded by *Miller* extend not only to those juveniles who have been given literal or natural life sentences, but also those who have been given *de facto* life sentences, which it has defined as sentences requiring more than 40 years in prison. *People v. Buffer*, 2019 IL 122327, ¶¶ 8, 40.

¶ 43 However, our supreme court has made clear that *Miller* directly applies only to juvenile offenders. *People v. Moore*, 2023 IL 126461, ¶ 38. As the circuit court recognized, Mr. Comi's eighth amendment challenge therefore lacked merit.

¶ 44 Our supreme court has "opened the door," however, for the application of the principles set out in *Miller* to young adults under the proportionate penalties clause of our state constitution. See *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25 (citing *People v. Harris*, 2018 IL 121932, ¶ 48, and *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44, which noted that the defendants in those cases—who were 18 and 19, respectively, at the time of their crimes—could assert youth-based proportionate-penalties claims in postconviction petitions). Under the proportionate penalties clause, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 70.

¶ 45 C. Mr. Comi's Appeal

¶ 46    In this appeal, Mr. Comi argues that due to chronic traumatic experiences including childhood physical and sexual abuse, he was immature for his age and should have been treated like a juvenile when sentenced. He contends that his sentence therefore violates the proportionate penalties clause because the court emphasized retribution and deterrence in sentencing him and did not consider his youth and attendant characteristics as factors in mitigation.

¶ 47    The State argues that we should affirm the circuit court's dismissal of Mr. Comi's petition. First, the State contends that Mr. Comi is not serving a *de facto* life sentence. According to the State, the custody and projected parole dates for Mr. Comi shown on the Illinois Department of Corrections (IDOC) website reflect that Mr. Comi may not serve a prison term longer than 40 years. See *Buffer*, 2019 IL 122327, ¶ 40 (defining a *de facto* life sentence as one that exceeds 40 years in prison).

¶ 48    Our review of the IDOC website, of which we may take judicial notice (*People v. Ware*, 2014 IL App (1st) 120485, ¶ 29), shows that Mr. Comi's "Custody Date" is June 12, 1994, and his "Projected Parole Date" is April 13, 2034, which is less than 40 years later. However, Mr. Comi was arrested for his offenses on January 28, 1994, in New York, and was detained there until he was extradited to Chicago, where he was thereafter held without bail. Mr. Comi is entitled to credit for his time spent in custody in New York. See *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 90 ("[d]etention in another state is to be credited against a defendant's sentence if the detention in the other state is a result of the offense for which the defendant is sentenced"). Since Mr. Comi's arrest in New York began his term, if he is released on April 13, 2034, he will have been in custody longer than 40 years: a *de facto* life sentence. And, in any event, a defendant may bring a proportionate penalties challenge to a sentence of any length, regardless of whether it is a life sentence. *Spencer*, 2025 IL 130015, ¶ 43. Thus, we reject this argument.

¶ 49    Next, the State argues that Mr. Comi's claim is barred by the doctrine of *res judicata*. "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action." (Internal quotation marks omitted.) *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 46.

¶ 50    The State notes that in his initial postconviction petition, Mr. Comi argued that his counsel on direct appeal was ineffective for failing to claim that his sentence violated the proportionate penalties clause because it did not account for his rehabilitative potential, which was shown by his youth and lack of criminal history. The circuit court summarily dismissed Mr. Comi's petition, and on appeal, he abandoned the proportionate-penalties claim. The State argues that Mr. Comi is now bringing the same claim, arising from the same set of facts, under a different legal theory. See *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 47 (explaining that separate claims arising under the same core of operative facts are considered the same cause of action for purposes of *res judicata*, "regardless of whether they assert different theories of relief" (internal quotation marks omitted)).

¶ 51    However, *res judicata* will be relaxed where the defendant shows cause under the cause-and-prejudice test. *Clark*, 2023 IL 127273, ¶¶ 45, 60. As our supreme court has recognized, it would be unfair to apply *res judicata* "where the right relied on has been recognized for the first time after the direct appeal." *Id.* ¶ 66. Recognition of such a new right would provide cause for raising the issue anew in a successive postconviction petition. Here, though, as the State contends and the circuit court found, our supreme court's precedent precludes Mr. Comi from establishing cause to raise his proportionate-penalties claim at this point.

¶ 52            1. Precedent Precludes Mr. Comi From Establishing Cause

¶ 53    Our supreme court has held that emerging adults over the age of 18 may raise "as-applied

13

proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *Id.* ¶ 87. However, it has also held that this kind of claim is only cognizable when raised in a defendant's initial postconviction petition, because it is "nothing more than an extension of proportionate penalties claims" that have always existed. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (citing *People v. Hilliard*, 2023 IL 128186, ¶¶ 27-28; *Moore*, 2023 IL 126461, ¶¶ 40-42; *Clark*, 2023 IL 127273, ¶¶ 88, 92-93; and *People v. Dorsey*, 2021 IL 123010, ¶ 74). This is because, according to the supreme court, "long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." *Clark*, 2023 IL 127273, ¶ 61. Therefore, "*Miller*'s unavailability prior to 2012 at best deprived [a] defendant of some helpful support for his state constitutional law claim, which is insufficient to establish cause." (Internal quotation marks omitted.) *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 54    Mr. Comi recognizes that, under *Clark*, he cannot simply rely on *Miller* and its progeny to provide him cause to raise this claim in a successive petition. Instead, Mr. Comi anchors his cause argument in newly developing brain science, including brain-imaging technology, that was unavailable when he filed his initial postconviction petition in 1998. Mr. Comi contends that the unavailability of this research was an objective factor impeding his ability to raise the claim in his first petition. He notes that Dr. Garbarino's report provided that the relevant brain-imagining technology "did not become readily available until the late 1990s," and was not widely used for developmental studies "until half a decade later."

¶ 55    While we certainly agree that new research on brain development provides helpful support for a proportionate-penalties claim, numerous other appellate court decisions, published and unpublished, have held that this support does not rise to the level of cause. See *People v. Haines*,

2021 IL App (4th) 190612, ¶ 51. See also *People v. Ross*, 2026 IL App (1st) 232431-U, *pet. for leave to appeal pending*, No. 132956 (filed Mar. 17, 2026); *People v. Minniefield*, 2025 IL App (1st) 240463-U, *pet. for leave to appeal pending*, No. 132492 (filed Nov. 19, 2025); *People v. Scaggs*, 2025 IL App (1st) 240953-U; *People v. Malone*, 2025 IL App (1st) 231881-U, *pet. for leave to appeal pending*, No. 132472 (filed Nov. 6, 2025). As the court pointed out in *Haines*, our supreme court has said that "the emergence of some helpful support for a claim that was already raisable is not cause." *Haines*, 2021 IL App (4th) 190612, ¶ 51 (citing *Dorsey*, 2021 IL 123010, ¶ 74).

¶ 56    Mr. Comi argues that the fact he filed his initial petition in 1998 distinguishes his case from those where defendants filed their initial petitions after the mid-2000's, when the brain-imaging technology was more widely available. But the legal basis for this claim was available before then, and, in at least one case in which we rejected this argument, the defendant filed his initial petition before Mr. Comi did. See *Malone*, 2025 IL App (1st) 231881-U, ¶ 18 (rejecting the defendant's argument that he established cause for his failure to raise his proportionate penalties claim in his 1995 initial petition, where the court "doubt[ed]" that the proposition that the brain continued developing into adulthood was unknown at that point, and noted that "the *amicus* brief filed by medical experts in *Miller v. Alabama* regarding brain development cited at least 10 studies published before 1995").

¶ 57    In support of his cause argument, Mr. Comi also relies on *People v. Blalock*, 2022 IL 126682. The defendant in *Blalock* established cause for a claim that his confession was coerced by the police because part of the claim's factual basis was that a pattern and practice of police misconduct existed, and evidence of the pattern did not yet exist when he filed his initial petition. *Id.* ¶¶ 40-46. Expounding on *Blalock*, we have found that, although a defendant must raise an

available claim even when the law is against him, "requiring a defendant to raise a claim that he lacks the ability to prove" is "a waste of court resources and a waste of time for everyone involved." *People v. Lee*, 2024 IL App (1st) 221268, ¶¶ 31-32.

¶ 58    Some of the cases cited above that determined that research on brain development is insufficient to show cause distinguish *Blalock*. See, *e.g.*, *Minniefield*, 2025 IL App (1st) 240463-U, ¶¶ 65-66. For example, in *Minniefield*, the court noted that wider police misconduct was found to be part of the factual basis for the coerced-confession claim in *Blalock*, and external corroborating evidence for the claim would have been virtually impossible for the defendant to gather. *Id.* ¶ 65. In contrast, when the defendant in *Minniefield* filed his initial postconviction petition, "the fact that his age made him different from a fully developed adult," which was the factual basis for the claim in his successive petition, had long been recognized as "a law of nature." (Internal quotation marks omitted.) *Id.* ¶ 66. Accordingly, he had the " 'essential legal tools' " required to raise a proportionate-penalties claim when he filed his initial petition, even though previously unavailable scientific developments may have supported the claim. *Id.* ¶ 63 (quoting *Moore*, 2023 IL 126461, ¶ 42).

¶ 59    While *Blalock* does not change the result in this case, it illustrates the problem for young adults seeking to rely on brain science to show that they should have been sentenced as juveniles. Although there are clear differences in the nature of the supporting facts proffered in *Blalock* and the scientific research proffered here, in both scenarios the evidence operates to make the underlying claims more persuasive. In *Blalock*, the court found that sufficed to establish cause. For proportionate penalties claims, however, the supreme court has determined that mere "helpful support" for a claim cannot establish cause. (Internal quotation marks omitted.) *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 60    There are, as various decisions have pointed out, pre-*Miller* cases in which a defendant's sentence was reduced because the court had failed to account for youth and related characteristics. See *Haines*, 2021 IL App (4th) 190612, ¶ 47 (citing *People v. Maldonado*, 240 Ill. App. 3d 470 (1992), *People v. Center*, 198 Ill. App. 3d 1025 (1990), and *People v. Adams*, 8 Ill. App. 3d (1972)). However, Mr. Comi filed his initial petition before our courts decided any of the cases that "expressly opened the door to extend *Miller*'s principles to the proportionate penalties clause and young adults." (Emphasis omitted.) *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 61. Further, as Justice Ocasio noted, specially concurring in *Minniefield*, *Miller* and its progeny "changed how we think about the law that governs the sentencing of youthful offenders." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 93.

¶ 61    Mr. Comi has also submitted evidence that the brain maturity of young adults is better understood than in 1995, when he was sentenced, or 1998, when he filed his initial petition. In tandem, evolving legal precedent and brain science have changed our perception of youthful offenders. This could surely be viewed as an "objective factor" that defendants like Mr. Comi could point to when they seek to file successive postconviction petitions based on claims that their sentences violate the proportionate penalties clause. See *Clark*, 2023 IL 127273, ¶ 60 (noting that cause requires "some objective factor external to the defense" that prevented the defendant from raising the claim earlier).

¶ 62    In theory, Mr. Comi could have presented an expert witness years ago to speak to his developmental maturity and opine that he was the equivalent of a juvenile. But making that claim without the benefit of recent caselaw and recent scientific research may very well have been "a waste of time for everyone involved." See *Lee*, 2024 IL App (1st) 221268, ¶ 32. As demonstrated by the summary dismissal of his related claim in his initial petition, until recently, any similar

claim that Mr. Comi could bring would likely fail for a lack of support. See *Harris*, 2018 IL 121932, ¶ 46 (finding a proportionate-penalties challenge "premature" where the record lacked "evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applie[d] to [the] defendant's specific facts and circumstances"). Now, Mr. Comi's claim is too late, failing because he declined to fruitlessly pursue it previously. We are not the first to find this troubling. See *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 61 ("[I]t is concerning to conclude that defendant has no path to demonstrate his rehabilitative potential simply because of timing even though the fact-based portion of defendant's argument regarding brain development in young adults is a relatively new development.").

¶ 63    If Mr. Comi could rely on *Miller* and our precedent extending its principles to young adults, together with the brain science corroborating those cases' principles, he well might be able to establish that his sentence failed to adequately account for his rehabilitative potential. However, our supreme court "has made it crystal clear that, for the purpose of granting leave to file successive postconviction petitions," our developing view of how youthful offenders should be sentenced does not provide cause to support a successive postconviction petition, and we are bound to follow that precedent. *Minniefield*, 2025 IL App (1st) 240463-U, ¶¶ 93-94 (Ocasio, J., specially concurring). Unless our supreme court is willing to see our society's greatly altered treatment of youthful offenders as more than mere "helpful support" for a preexisting claim, we agree with the State that Mr. Comi cannot meet the cause portion of the cause-and-prejudice test.

¶ 64    Because Mr. Comi has not established cause, we need not determine whether he has established prejudice. *People v. Flournoy*, 2024 IL 129353, ¶ 115. We also need not reach Mr. Comi's final argument—that his postconviction counsel in the circuit court provided unreasonable assistance by forfeiting the specific argument raised in this appeal, where counsel only made it

orally and not in writing—because the State does not claim forfeiture on that basis.

¶ 65    In sum, the circuit court did not err in finding that Mr. Comi failed to prove cause and prejudice, a proper reason to dismiss his petition at the second stage of proceedings under the Act. *Thames*, 2021 IL App (1st) 180071, ¶ 78. We therefore affirm the court's order granting the State's motion to dismiss Mr. Comi's petition.

¶ 66                                    IV. CONCLUSION

¶ 67     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 68    Affirmed.